# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-00742-SCT

*JEFF GATEWOOD d/b/a ELLIS ISLE EXXON*

*v.*

*ROY SAMPSON*

| | |
|---|---|
| DATE OF JUDGMENT: | 2/7/2000 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PATRICK M. TATUM |
| ATTORNEYS FOR APPELLEE: | G. TODD BURWELL |
| | KRISTEN A. HORTON |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 3/28/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/18/2002 |

**BEFORE PITTMAN, C.J., EASLEY AND GRAVES, JJ.**

**PITTMAN, CHIEF JUSTICE, FOR THE COURT:**

¶1. Roy Sampson was shot during an attempted robbery in the parking lot of the Ellis Isle Exxon gas station in Jackson, Mississippi. He filed a negligence suit against the gas station's owner, Jeff Gatewood, to recover damages resulting from his injury. After a jury trial in the Circuit Court of Hinds County, Sampson was awarded $308,000.00 in compensatory damages. Gatewood now appeals this judgment.

## FACTS

¶2. Around one o'clock in the morning of June 17, 1995, Roy Sampson pulled his car into the Ellis Isle Exxon gas station in Jackson, Mississippi, to buy gas and use one of the pay telephones located outside near the restrooms. While he was using the phone, another car with four occupants parked near the other pay phone, and someone exited the car as if to use it. Almost ten minutes passed before this man got back into the other car and the car began driving away. A few seconds later, Sampson-who was still using the phone-was shoved in the back by the same man who had just left the other pay phone. The man was armed with a gun and when Sampson turned around to face him, Sampson grabbed the gun and a struggle for its possession ensued. During the struggle, the gun fired, and the remaining occupants of the other vehicle began shooting at both Sampson and his assailant. A bullet struck and killed Sampson's attacker and, as Sampson fled, a bullet struck him in the back of the head.[1] He managed to run to a neighboring restaurant where a security guard assisted him and called an ambulance. At the hospital, Sampson was treated for a gunshot wound that had entered and exited the back of his head without ever entering his skull. He was

released from the hospital between seven and nine o'clock the same morning.

¶3. Almost two years later, Sampson filed a lawsuit against Jeff Gatewood, the owner of the Exxon station, alleging Gatewood was negligent by not providing reasonable security measures to protect Sampson from attack. In the time between the incident and the trial, the pay telephones at the Ellis Isle Exxon were moved to another location on the premises. Before trial, Sampson moved in limine to exclude the testimony of Gatewood's expert. This expert was to testify that highly motivated criminals such as Sampson's attackers would not be deterred by the presence of security measures. The expert was also to testify concerning the criminal backgrounds and gang affiliations of each of the attackers. The trial judge allowed the expert to testify but excluded testimony concerning the backgrounds or affiliations of the attackers. Eleven jurors ultimately found in favor of Sampson and awarded him $308,000.00 in compensatory damages. When polled, the remaining juror stated that this was not her verdict.

¶4. After the trial, Gatewood's counsel made contact with the dissenting juror and was told of how at least one of the other jurors had intentionally gone to the Ellis Island Exxon during the trial after the court had recessed for the day and observed the pay phones had been moved. The investigating juror had reported this fact to the dissenting juror and stated it proved Gatewood's guilt. The dissenting juror declined to sign an affidavit stating these facts. Ten days after entry of judgment, Gatewood's counsel filed a motion for a new trial, J.N.O.V., or in the alternative for a remittitur and offered his own signed affidavit stating the facts he had gleaned from his discussions with the dissenting juror. This motion requested that the trial court investigate the allegations of juror misconduct found in the affidavit. The trial court denied the motion and struck the affidavit from the record. Gatewood now appeals the rulings and judgment of the trial court.

## ANALYSIS

### I. WHETHER THE TRIAL COURT ERRED IN STRIKING THE AFFIDAVIT OF WALTER MORRISON, ERRED IN FAILING TO CONDUCT A HEARING CONCERNING JUROR MISCONDUCT AND FURTHER ERRED IN FAILING TO GRANT THE APPELLANT A NEW TRIAL BASED UPON THE JUROR'S MISCONDUCT.

¶5. Jurors are generally precluded from testifying to impeach their own verdict. *See* Miss. R. Evid. 606(b); *Ratliff v. Nail*, 231 So. 2d 798 (Miss. 1970); *Index Drilling Co. v. Williams*, 242 Miss. 775, 137 So. 2d 525 (1962). However, "a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." Miss. R. Evid. 606(b). When this exception applies, this Court has set forth the procedure to address allegations a jury has received extraneous information. According to *Gladney v. Clarksdale Beverage Co.*, 625 So. 2d 407 (Miss. 1993), the first step in this procedure is for the counsel who first learns of possible improper extraneous jury influence to bring it to the attention of the trial court and opposing counsel "as expeditiously as possible." *Gladney*, 625 So. 2d at 418. The remaining steps are as follows:

> Once an allegation of juror misconduct arises, then the next step is to consider whether an investigation is warranted. In order for the duty to investigate to arise, the party contending there is misconduct must make an adequate showing to overcome the presumption in this state of jury impartiality. Juror polling shall only be permitted by an attorney, outside the supervision of the court, upon written request.

At the very minimum, it must be shown that there is sufficient evidence to conclude that good cause exists to believe that there was in fact an improper outside influence or extraneous prejudicial information. . . . Although a minimal standard of good cause showing of specific instances of misconduct is acceptable, the preferable showing should clearly substantiate that a specific, non-speculative impropriety has occurred. The sufficiency of such evidence shall be determined by the trial court if a post-trial hearing is indeed warranted under these standards.

*Id.* at 418-19. Gatewood asserts the facts in Walter Morrison's affidavit provide sufficient evidence to require an investigation into whether the jury was influenced by extraneous information. Morrison's affidavit reads in relevant part as follows:

During this conversation, [dissenting juror] advised me that at least one of her fellow jurors had made an independent investigation during trial by going to Ellis Isle Exxon one night after Court was recessed for the day. [Dissenting juror] advised that this juror learned during her investigation that the telephones at the Ellis Isle Exxon had been moved after this incident and that Mr. Gatewood had "proved his guilt" with such actions.

Sampson counters by claiming a juror's sworn testimony is necessary, through affidavit or on the witness stand, to amount to sufficient evidence of misconduct. He also claims Morrison's affidavit is inadmissible hearsay. Finally, Sampson states that the testimony of two witnesses and enlarged photographs admitted as evidence at trial had already put the jury on notice that the phones were no longer in the position they occupied the morning Sampson was shot. The trial court's ruling on Gatewood's motion is as follows:

The court finds that Plaintiff's motion to strike Defendant's exhibits to their motion [Morrison's affidavit] is well taken and should be granted. Finally, with regard to the Defendant's allegations of juror misconduct, the Court finds that the Defendant has failed to make the required showing of juror misconduct sufficient to justify an investigation of the alleged matters. Moreover, the court will not allow unsubstantiated allegations by one a [sic] member of the jury against another, to serve as the bases for an investigation of alleged juror misconduct. The court finds that the complaining juror, when polled, was the only juror who disagreed with the jury's verdict and the allegation of misconduct was only raised by the losing Defendant's [sic] after contacting and interrogating the juror about the verdict. The court will not permit a challenge of the verdict of the jury under such circumstances.

¶6. Morrison's affidavit is the only evidence of outside influence Gatewood provided to the trial court. The dissenting juror neither signed an affidavit nor gave testimony on the witness stand in the present case. The information was provided to the Court and opposing counsel approximately nineteen days after Morrison became aware of the possible outside influence, but within the ten days after entry of judgment. This affidavit does not mention the day the juror went to the scene; the names or number of jurors who viewed the Ellis Island Exxon; whether the investigating juror was a member of the jury panel or an alternate; whether the dissenting juror heard the results of the investigation in the jury room or outside the court; or whether the information discovered in the independent investigation was made known to the entire jury panel during deliberations. However, the affidavit does indicate that at least one juror possibly went to the scene of the incident and reported her findings back to at least one other member of the jury panel and, in the opinion of the dissenting juror, the investigating juror considered this evidence significant concerning Gatewood's liability.

¶7. While this might give rise to questions concerning improper outside influence, the information in the affidavit is twice removed from the original declarant. It would be unwise to find such statements excepted from the rules governing hearsay through means of the "catch all" exceptions cited by Gatewood because the information the attorney received and passed along in his affidavit could easily be false. *See* Miss. R. Evid. 803(24), 804(5). The manner in which this information was brought to the court and the fact the dissenting juror was unwilling to sign an affidavit cast greater doubt upon its authenticity and veracity.

¶8. Furthermore, the record indicates the jury could have been aware the phones had been moved without conducting an improper investigation. Two witnesses, Sampson and his security expert, made reference to the phones' location in the past tense. No objection was made to this testimony. This would indicate to anyone listening closely that the phones were no longer in the same location they occupied when the attack occurred. Sampson also submits the enlarged pictures of the Ellis Isle Exxon made after the phones were moved and admitted into evidence without objection show the phones had been moved. Sampson's testimony also indicates he demonstrated on the pictures to the jury where the phones were located the morning of his attack.

¶9. In light of the above, we find the affidavit submitted to the trial judge in support of Gatewood's claim of juror misconduct does not rise to the necessary level of proof required to conduct an investigation. The jury could easily have been aware of the fact the phones had been moved from the position they occupied the night of the attack. This evidence, while possibly demonstrating subsequent remedial measures taken by Gatewood, is beyond review as no objection was made to preserve the issue. *See* Miss. R. Evid. 103(a)(1) ; 407.

¶10. A circuit court's decision to deny a motion for a new trial due to outside juror influence is reviewed for abuse of discretion. ***Gladney***, 625 So. 2d at 415; ***Salter v. Watkins***, 513 So. 2d 569, 571 (Miss. 1987); ***Davis v. Singing River Elec. Power Ass'n***, 501 So. 2d 1128, 1129 (Miss. 1987). Since it was not error to deny the request to investigate the juror misconduct, neither was it an abuse of discretion to deny the motion for a new trial and strike the affidavit of Walter Morrison alleging the outside influence.

### II. WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT THE DEFENDANT A J.N.O.V. OR A DIRECTED VERDICT.

¶11. This Court applies the same standard of review when considering the dispositions of a motion for judgment notwithstanding the verdict and a motion for a directed verdict. ***Steele v. Inn of Vicksburg, Inc.***, 697 So.2d 373, 376 (Miss.1997). "This Court will consider the evidence in the light most favorable to the appellee, giving the appellee the benefit of all favorable inferences that may be reasonably drawn from the evidence." ***Id.*** If the facts are so overwhelmingly in favor of the appellant that a reasonable juror could not have arrived at a contrary verdict, this Court must reverse and render. ***Id.*** at 376. On the other hand, if substantial evidence exists in support of the verdict, that is, "evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions," then this Court must affirm. ***Id.***

¶12. Gatewood contends Sampson did not prove by a preponderance of the evidence that: 1) Gatewood was under a duty to provide security measures at the Ellis Isle Exxon and, 2) if there was such a duty, Gatewood was negligent because the attack on Sampson was not foreseeable. Sampson argues there is enough evidence to support the jury's verdict and to show that a third-party attack was reasonably foreseeable at the Ellis Isle Exxon station.

¶13. There can be little doubt that a business owes a duty of reasonable care to protect its patrons from attacks by third parties while they are on its premises. "The duty imposed upon a business proprietor to protect a patron from assaults by other patrons is that the business owner, though not an insurer of the invitee's safety, has a duty to exercise reasonable care to protect the invitee from reasonably foreseeable injury at the hands of other patrons." *Lyle v. Mladinich*, 584 So. 2d 397, 399 (Miss. 1991) (citations omitted). *See also* **McWilliams ex rel. Smith v. City of Pascagoula**, 657 So.2d 1110, 1111-12 (Miss. 1995); **Crain v. Cleveland Lodge 1532, Order of Moose, Inc.**, 641 So. 2d 1186, 1189 (Miss. 1994); **May v. V.F.W. Post No. 2539**, 577 So.2d 372, 375 (Miss. 1991); **Grisham v. John Q. Long V.F.W. Post No. 4057, Inc.**, 519 So.2d 413, 416 (Miss.1988). The physical area where the duty is owed includes the parking lot area around the building. *Lyle*, 584 So. 2d at 399. Sampson's uncontradicted testimony is that he was on the premises of the Ellis Isle Exxon to use the phones and buy gasoline. He was, therefore, a business patron to whom Gatewood owed a duty of reasonable care. *Cf.* [Hudson v. Courtesy Motors, Inc.](#), 794 So. 2d 999, 1003 (Miss. 2001) (An invitee is defined as a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage). The remaining question to be answered is whether the evidence introduced at trial was sufficient to prove Sampson's attack was reasonably foreseeable.

¶14. In *Lyle*, this Court stated two ways to establish legal causation, or foreseeability, in cases of assault by a third person. "The requisite 'cause to anticipate' the assault may arise from (1) actual or constructive knowledge of the assailant's violent nature, or (2) actual or constructive knowledge that an atmosphere of violence exists [on the premises]. . ." *Lyle*, 584 So. 2d at 399 (quoting *Grisham*, 519 So. 2d at 416). Evidence of the existence of an atmosphere of violence may include "the overall pattern of criminal activity prior to the event in question that occurred in the general vicinity of the defendant's business premises, as well as the frequency of criminal activity on the premises." *Lyle*, 584 So. 2d at 399.

¶15. Gatewood contends that the evidence Sampson offered at trial failed to show by a preponderance of the evidence an atmosphere of violence existed at the Ellis Isle Exxon. Specifically, he states that no violent crimes occurred on the premises prior to Sampson's attack and, although several crimes in the surrounding area were reported to the police, none were ever shown to have actually occurred. Sampson points to evidence in the record which shows that sixty violent crimes were reported to police in the neighborhood of the Ellis Isle Exxon within the three years prior to the attack. Thirty-two of those crimes reportedly occurred in the nearby Ellis Isle Shopping Center. Two incidents occurred in close proximity to the gas station: an armed carjacking occurred on the street in front of the station and a bullet fired from nearby entered the building. A fight also reportedly occurred in the Exxon parking lot.

¶16. Gatewood refers this Court to *Crain* which affirmed summary judgment for a business owner when a patron was attacked in the owner's parking lot. There the Court examined how other state courts have dealt with the issue of foreseeability and specifically rejected a totality of the circumstances test for evidence tending to show an atmosphere of violence existed at the scene of an assault. *Crain*, 641 So. 2d at 1191-92. The Court found that such a test at that time was often interpreted to place a burden on business owners approaching strict liability for attacks upon patrons who are on its premises. *Id.* at 1192. The majority opined:

> While the amount and type of criminal activity in the general vicinity of the defendant's business premises is one factor that should be given consideration when determining foreseeability, merchants

are not required to carry out the duties of the police force. Crime has become so prevalent in recent years that even without taking the financial burden into consideration it would be impossible for a business to guarantee the safety of everyone coming onto its premises.

*Id.* Evidence offered to prove an atmosphere of violence existed in a two block radius of the Moose Lodge included: 110 commercial burglaries, 3 residential burglaries, 11 assaults, 152 larcenies, one bomb threat and one indecent exposure. *Id.* at 1187. After reviewing these statistics, the Court stated Crain's claim his attack was foreseeable was without merit. *Id.* at 1192. However, the Court went on to say, "[b]ased on the scant evidence in the record it would be *difficult* to say the assault on Crain was foreseeable." *Id* (emphasis added). Despite this backpedaling, the Court found dispositive the issue of proximate cause. "Assuming, without deciding that Crain made a showing sufficient to establish the foreseeability of the assault . . . he must still make a showing of proximate cause." *Id.* The Court affirmed the summary judgment because there was no evidence of proximate cause in the record. *Id.*

¶17. *Crain* differs from the case sub judice in that evidence establishing proximate cause and foreseeability was presented to the jury. Gatewood now claims the evidence of the quantity of crimes in the area in the three years prior to the attack and the quality of the report upon which the jury relied to find him liable is insufficient as a matter of law to sustain the verdict. We disagree. There was enough evidence presented to the jury to create a factual question whether an atmosphere of violence existed around the Ellis Isle Exxon about which differing opinions could be formed. Therefore, Gatewood fails to meet the burden necessary to overturn the jury's verdict.

### III. WHETHER THE TRIAL COURT ERRED IN GRANTING PLAINTIFF'S MOTION IN LIMINE PRECLUDING DEFENDANT'S EXPERT WITNESS FROM RELYING ON AND MENTIONING THE PERPETRATORS' CRIMINAL BACKGROUND AND GANG INVOLVEMENT.

¶18. Rulings on the admissibility of expert testimony are reviewed for abuse of discretion. *Todd v. State*, 806 So. 2d 1086, 1095 (Miss. 2001); *Hall v. State*, 611 So. 2d 915, 919 (Miss. 1992). Prior to trial, Sampson moved to preclude Gatewood's expert from testifying about the criminal backgrounds and gang affiliations of Sampson's attackers on the grounds that such information is irrelevant, prejudicial, and hearsay. The trial court granted the motion, finding such evidence irrelevant. Gatewood now claims the trial court erred because experts are allowed to form opinions relying upon and testify concerning evidence not in the record. Sampson counters that Gatewood's expert had ample opportunity to give his opinion concerning the foreseeability of the attack without mentioning the background of Sampson's assailants and did so at trial. Sampson also notes no offer of proof was made about the criminal background of Sampson's attackers which would help the Court determine if the testimony could have affected the outcome of the case.

¶19. The Mississippi Rules of Evidence allow an expert to offer opinion testimony based upon facts which are not in evidence. "The expert may testify in terms of opinion or inferences and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination." Miss. R. Evid. 705. However, all evidence must be relevant to be admissible. Miss. R. Evid. 402. Finally, relevant evidence can be excluded where its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Miss. R. Evid. 403.

¶20. We find the criminal history of Sampson's attackers was irrelevant to prove the underlying issue whether Gatewood was negligent in the care of his patron Sampson. The stated purpose of the evidence of criminal history was to show that no security measures would have protected Sampson against the determined attack of hardened criminals. Gatewood's expert was allowed to testify that, in his opinion, the attack was unpreventable. In the presence of the jury he testified that Sampson's attackers had been ingesting marijuana and driving around looking for someone to rob. He also testified that, since they were operating under the influence of illegal drugs and had developed a plan of attack prior to encountering Sampson, he did not think security measures such as a security camera or a security guard would have prevented the attack. Therefore, the expert was allowed to accomplish the purpose for which he was placed in front of the jury. To allow testimony that the attack was orchestrated by men affiliated with a gang and with criminal histories would only have misled the jurors and confused the issues. Such information's probative value is substantially outweighed by the danger of unfair prejudice. The trial court's ruling was not an abuse of discretion, and we will not overturn it.

### IV. WHETHER THE VERDICT AGAINST GATEWOOD IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND THE VERDICT IS THE RESULT OF BIAS, PASSION AND PREJUDICE.

¶21. Gatewood's final assertion of error is that the trial court erred in denying his motion for a new trial on the grounds that the jury award was excessive. He asks this Court to grant a remittitur pursuant to Miss. Code Ann. § 11-1-55 which grants this Court such power when it finds "that the damages are excessive . . . for the reason that the jury or trier of the facts was influenced by bias, prejudice, or passion" or "when the verdict is so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous." Miss. Code Ann. § 11-1-55 (1991).

¶22. As stated previously, a circuit court's refusal to grant a new trial is reviewed for abuse of discretion. *Bobby Kitchens, Inc. v. Miss. Ins. Guar. Ass'n*, 560 So.2d 129, 132 (Miss.1989). "Circumstances in which a new trial may be granted are 'when the verdict is against the overwhelming weight of the evidence, or when the jury has been confused by faulty jury instructions, or when the jury has departed from its oath and its verdict is a result from bias, passion, and prejudice.'" *Hamilton v. Hammons*, 792 So. 2d 956, 965 (Miss. 2001) (quoting *Bobby Kitchens, Inc.*, 560 So. 2d at132; *Clayton v. Thompson,* 475 So.2d 439, 443 (Miss.1985); *Griffin v. Fletcher,* 362 So.2d 594, 596 (Miss.1978). "Generally, 'the only evidence of corruption, passion, prejudice or bias on the part of the jury is an inference, if any, to be drawn from contrasting the amount of the verdict with the amount of the damages.'" *Green v. Grant*, 641 So. 2d 1203, 1209 (Miss. 1994) (quoting *Biloxi Elec. Co. v. Thorn*, 264 So.2d 404, 405 (Miss. 1972). *See also Rodgers v. Pascagoula Pub. Sch. Dist.*, 611 So. 2d 942, 945 (Miss. 1992).

¶23. Where a trial court refuses to grant a remittitur, this Court reviews the decision for abuse of discretion. *Odom v. Roberts*, 606 So. 2d 114, 121 (Miss. 1992). The jury's award is not to be set aside unless it is entirely disproportionate to the injury sustained. *Illinois Cent. R.R. v. Gandy*, 750 So. 2d 527, 534 (Miss. 1999). However, when determining the reasonableness of an award, the "sky is simply not the limit." *Id* (quoting *Simeon v. T. Smith & Son, Inc.*, 852 F.2d 1421, 1427 (5th Cir. 1988)). The Court looks to see whether the verdict is so excessive it shocks the conscience evidencing a bias, passion and prejudice on the part of the jury. *Dorris v. Carr*, 330 So. 2d 872, 874 (Miss. 1976). If a remittitur in any amount is awarded, the plaintiff will then have the option of accepting the reduced award or going to trial again on the issue of damages alone. *Odom*, 606 So. 2d at 122.

¶24. Gatewood contends the amount of compensatory damages awarded by the jury demonstrated it departed from its oath and the verdict was the result of bias, passion and prejudice. Samson points to the evidence of pain and suffering and medical expenses offered at trial as proof of the reasonableness of the damages.

¶25. Sampson entered proof of lost wages totaling $4,900.00. His total medical expenses amounts to $3,102.50. The total amount awarded in this case is almost one hundred times Sampson's medical expenses. Sampson's special damages total $8,002.50. The total damages awarded by the jury is approximately thirty-eight times the proof of special damages.

¶26. Sampson described the following as evidence of his past and future pain and suffering and future medical expenses. He awoke in the hospital with a headache and soreness. He has recurring nightmares, causing him to lose sleep. He also gets headaches and dizziness when he stands for long lengths of time. The gunshot wound is sensitive to the touch and is scarred. He suffers from depression and may require several future visits to a psychiatrist. It is contested whether he suffers from post-traumatic stress syndrome.

¶27. Both Gatewood and Sampson refer this Court to the Court of Appeals opinion in *Cade v. Walker*, 771 So. 2d 403 (Miss. Ct. App. 2000). That court, in a 10-0 decision, held that it would not disturb a total jury award for compensatory damages which was fifty-one times the amount of the plaintiff's medical expenses. *Id* at 410. After reviewing the elements of the damages awarded, the court compared the award to other awards involving similar circumstances. *Id* at 408-9. Stating that the amount of damages is primarily a concern for the jury who is entitled to a large amount of leeway, the court deferred to the jury's judgment and affirmed the award. *Id* at 410.

¶28. It is primarily the province of the jury to determine the amount of damages to be awarded. *Harvey v. Wall*, 649 So. 2d 184, 187 (Miss. 1995); *Rodgers*, 611 So.2d at 945. We are not of the opinion that the jury award in this case is entirely disproportionate to the injuries Sampson sustained. Therefore, we leave the award intact, finding the trial court did not abuse its discretion in denying Gatewood's motion for a remittitur.

## CONCLUSION

¶29. The trial court did not err in refusing to investigate or grant a new trial based upon allegations of outside juror influence when the only evidence offered in support of the allegation was the affidavit of defense counsel. The substance of the affidavit was twice removed from the person who related it, and there is evidence in the record to indicate the jury already knew that the phones at the Ellis Isle Exxon had been moved subsequent to the attack on Sampson. The trial court also did not err in refusing to grant the motion for a directed verdict or judgment notwithstanding the verdict. The jury was presented with competent evidence of criminal activity in the area surrounding the Ellis Isle Exxon from which differing opinions concerning whether an atmosphere of violence existed could be formed. The trial court did not abuse its discretion when it refused to allow Gatewood's expert to testify concerning the criminal history and gang affiliations of Sampson's attackers as such testimony was not relevant. The trial court did not abuse its discretion when it failed to offer a remittitur after the jury awarded total compensatory damages almost one hundred times the amount of Sampson's medical expenses. Therefore, the judgment of the Hinds County Circuit Court is affirmed.

¶30. **AFFIRMED.**

**McRAE, P.J., WALLER, DIAZ, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. COBB, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. SMITH, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED IN PART BY COBB, J.**

**SMITH, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶31. I agree with the majority's determination to affirm the judgment entered on the jury's verdict finding of liability against Gatewood. However, I disagree with the majority's conclusion that the damages award is not excessive. For this reason, I respectfully dissent.

¶32. Sampson offered the following proof of damages: (1) medical expenses in the amount of $3102.50; (2) lost wages in the amount of $4900; and (3) future medical expenses of $1400 - a minimum, according to Sampson. Of a total verdict of $308,000, $298,597.50 remains for pain and suffering. Sampson's proof of pain and suffering was as follows: headache and soreness in the hospital, from which he was released six to eight hours after the incident; recurring nightmares and loss of sleep; occasional headaches and dizziness; hypersensitivity and scarring of the wound; depression; and post-traumatic stress. In light of this evidence, an award nearly 100 times Sampson's medical expenses is, in my view, entirely disproportionate to the injuries Sampson sustained.

¶33. When this Court reviews the verdict of the jury after the trial court has refused to grant a new trial on the question of damages, the question then becomes whether the verdict was either so excessive or inadequate as to shock the conscience and to indicate bias, passion and prejudice on the part of the jury, or, whether the jury failed to respond to reason. *Dorris v. Carr*, 330 So. 2d 872, 874 (Miss. 1976). Evidence of corruption, passion, prejudice or bias on the part of the jury is an inference, if any, to be drawn from contrasting the amount of the verdict with the amount of the damages. *Rodgers v. Pascagoula Pub. Sch. Dist.*, 611 So. 2d 942, 944-45 (Miss. 1992); *Pham v. Welter*, 542 So. 2d 884, 888 (Miss. 1989); *Matkins v. Lee*, 491 So. 2d 866, 868 (Miss.1986); *City of Jackson v. Ainsworth*, 462 So. 2d 325, 328 (Miss. 1984); *Biloxi Elec. Co. v. Thorn*, 264 So. 2d 404, 405 (Miss. 1972). While pain and suffering is, to a large degree, not susceptible to monetary quantification, the jury necessarily has broad leeway. Nevertheless, this Court has recognized that the sky is not the limit. *Illinois Cent. R.R. v. Gandy*, 750 So. 2d 527, 534 (Miss. 1999).

¶34. The jury awarded Sampson damages 100 times his medical expenses. This Court has never sanctioned a verdict so disproportionate as the case at bar. Because I find the award to be excessive, I would reverse and remand for a new trial on damages.

**COBB, J., JOINS THIS OPINION IN PART.**

1. The remaining occupants of the other car were later convicted of capital murder.