933 So.2d 983 (2005)
Lorie G. STEVENS, individually, and as Mother and Next Friend of Gordon Joseph Stevens, III, a Minor, Jacob A. Stevens, a Minor, Jason R. Stevens, a Minor, and Jeffrey A. Stevens, a Minor, Appellant,
v.
Glenn R. TRIPLETT, Appellee.
No. 2004-CA-01080-COA.
Court of Appeals of Mississippi.
November 15, 2005.
James W. Nobles, Jackson, Travis T. Vance, Vicksburg, attorneys for appellant.
John Evans Gough, J. Tucker Mitchell, Ridgeland, attorneys for appellee.
EN BANC.
IRVING, J., for the Court.
¶ 1. Lorie Stevens sued Glenn Triplett as a result of an assault she suffered while attempting to inspect a piece of property which Triplett was offering for sale. She alleged that Triplett's failure to secure the premises was the proximate cause of the injuries she suffered in the assault. At the close of discovery, the court found that Stevens had failed to produce any genuine issue of material fact and therefore granted summary judgment to Triplett. Feeling aggrieved, Stevens appeals.
¶ 2. Finding no error, we affirm the grant of summary judgment.

FACTS
¶ 3. On July 18, 1999, Stevens and her children went to look at one of Triplett's *984 properties in Vicksburg. The property, 2090 Skyfarm Avenue, is located at the end of a street in a secluded area. Stevens arrived at the property a few minutes before the prearranged meeting time with Triplett, who had not yet arrived. After Stevens's arrival, she and her children exited her vehicle to look around. At that time, two men, Romika Perkins and Derrick Warren, appeared[1] and threatened Stevens and her children at gunpoint. Perkins and Warren separated Stevens and her children into three groups and made them lie down in the gravel outside the house. At that point, Perkins and Warren heard Triplett's truck coming up the driveway and consequently forced Stevens and her children into the house where they were locked in a small utility closet. Triplett arrived soon thereafter and was also forced into the house where he was robbed and beaten. Later, Stevens was robbed and sexually assaulted while her son was forced to watch. Perkins and Warren eventually left, and Stevens, her children, and Triplett were able to escape. Perkins and Warren are currently serving criminal sentences in the state penitentiary on convictions resulting from the incident.[2]
¶ 4. Stevens produced evidence indicating that her family has suffered permanent damages as a result of the incident. Accordingly, Stevens has sued Triplett for negligence in failing to provide Stevens and her family with a reasonably safe premises as required by law.
¶ 5. Triplett testified in his deposition that there were several copies of the keys to the house unaccounted for at the time in question. Triplett also testified that when he left the building two days earlier, he did not check to make sure that all the doors and windows were locked; however, he later testified that he checked all the doors and had previously checked all the windows. Evidence indicated that the assailants gained access to the house by breaking a window and reaching in to unlock the door.[3] Triplett admitted during his deposition that the deadbolt on the door must not have been locked since there were no signs that the door was broken in to gain entry.[4] A Vicksburg police report detailing criminal activity in the area was produced during discovery. Stevens and Triplett each produced expert witnesses who testified as to the responsibilities owed by Triplett to keep the premises safe and whether or not Triplett had fulfilled those duties.[5]
¶ 6. Shortly before trial was to commence, the court below granted Triplett's motion for summary judgment. Additional facts follow as necessary below.

STANDARD OF REVIEW
¶ 7. We employ a de novo standard of review when reviewing a lower court's grant of summary judgment. McMillan v. Rodriguez, 823 So.2d 1173, 1176-77 (¶ 9) (Miss.2002). All evidence in the record *985 will be viewed in the light most favorable to the party against whom summary judgment was entered. Id. Summary judgment will only be affirmed where the non-moving party fails to present any genuine issue of material fact. Id. The burden of showing that there is no genuine issue of material fact rests on the moving party. Id.

ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 8. A business owner has a duty to protect his invitees from the acts of third parties where such acts are reasonably foreseeable. Lyle v. Mladinich, 584 So.2d 397, 399 (Miss.1991). Acts of third parties are reasonably foreseeable if there is either: "(1) actual or constructive knowledge of the assailant's violent nature, or (2) actual or constructive knowledge that an atmosphere of violence exists...." Id. No evidence was produced showing or even suggesting that Triplett was even aware that Perkins and Warren existed, which leads to the inescapable conclusion that Stevens failed to prove that Triplett had actual or constructive knowledge of Perkins's and Warren's violent nature. Consequently, in order to prevail, Stevens was required to produce some evidence that an atmosphere of violence existed on the premises, such that Triplett would have had constructive notice of that atmosphere, in order to prevail. Lyle specifically established that knowledge of an atmosphere of violence may be proved by "the overall pattern of criminal activity prior to the event in question that occurred in the general vicinity...." Id.
¶ 9. Stevens cites a recent Mississippi Supreme Court case that dealt with this same issue. That case upheld the decision of a jury finding that a shooting at a gas station was reasonably foreseeable. Gatewood v. Sampson, 812 So.2d 212, 220-21 (¶¶ 15-17) (Miss.2002). In affirming the jury's verdict, the Gatewood court explained that "[t]here was enough evidence presented to the jury to create a factual question whether an atmosphere of violence existed around the Ellis Isle Exxon about which differing opinions could be formed. Therefore, Gatewood fails to meet the burden necessary to overturn the jury's verdict." Id. at 221 (¶ 17). We find this case distinguishable from the case before us by virtue of the fact that in Gatewood, sixty violent crimes were found to have been committed in the area in the three years prior to the incident, and two of those had happened more or less at the gas station. Id. at (¶ 15). By contrast, the Vicksburg police report shows only a handful of violent crimes in the area in the five years preceding the incident in question, none of which occurred on Triplett's property.
¶ 10. Stevens also cites one of our recent cases addressing the issue of reasonable foreseeability. In that case, we affirmed a jury verdict against the proprietor of a laundry facility where ample evidence had been presented concerning the lack of security measures taken by the proprietor, who was shown to have been aware of the dangerous conditions around his business. Gibson v. Wright, 870 So.2d 1250, 1257-58 (¶¶ 22-27) (Miss. Ct.App.2004). In Gibson, the plaintiff presented evidence of: (1) poor lighting, (2) unlocked doors, (3) the security measures of other businesses in the area, (4) the previous hiring of a security guard, (5) police officer testimony as to the high crime rate in the area, and (6) testimony by a police officer that the defendant had been told to pursue extra security measures. Id. at (¶¶ 22-26). We find Gibson is distinguishable from the case sub judice, because the only evidence presented by Stevens was the aforementioned police report and a single expert witness. *986 There was significantly more evidence produced by the plaintiff in Gibson than produced by Stevens.
¶ 11. We find that Stevens has failed to present any evidence creating a genuine issue of material fact regarding the reasonable foreseeability of the assault by Perkins and Warren. The affidavit provided by Stevens's expert witness merely states that the incident was foreseeable, without providing any analysis of the dangerous nature of the property as would be required for Stevens to prevail. Likewise, the crime report provided by the Vicksburg Police Department fails to show that an atmosphere of violence existed around 2090 Sky Farm Avenue, especially considering that the incident in question occurred in the middle of the afternoon. Even after expanding the neighborhood beyond the two blocks urged by Triplett, there is not enough criminal activity to show that an atmosphere of violence existed sufficient to put Triplett on any sort of notice. A handful of burglaries and assaults, a rape, and a kidnaping, most of which occurred in the middle of the night, are not enough to show that Triplett breached the duty he owed to Stevens' when he invited her to see the property.
¶ 12. Stevens also argues that the incident was reasonably foreseeable because Triplett had not recovered all the keys to the property or locked the deadbolt on the door. We find this evidence particularly unconvincing for two reasons. First, the evidence produced indicated that a rock was used to break into the house, which indicates that the outstanding keys were not used to enter the house. Although the evidence indicated that Triplett probably did not lock the deadbolt on the door, that additional precaution would have only meant that the door would have to have been broken in to gain entry. Given the secluded nature of the property, anyone determined to get in could have obviously done so by breaking a window or busting in a door. Therefore, the outstanding keys and failure to deadbolt the door clearly did not lead to the assault. Second, the assault on Stevens and her family began outside the house. Since the assault began outside, it was particularly unforeseeable and had nothing to do with any keys or deadbolts. Perkins and Warren could have just as easily assaulted Stevens and her family elsewhere on the property. Therefore, we find that summary judgment was properly granted in this case.
¶ 13. THE JUDGMENT OF THE CIRCUIT COURT OF WARREN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., BRIDGES, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] It is not entirely clear whether they appeared from inside the house or from around the back of the house.
[2] Perkins went to trial and was given a life sentence. Warren made a plea agreement and was sentenced to thirty-five years.
[3] Perkins maintained that the house was already open when he and Warren arrived. Whether this is true or not, it was apparent from the evidence that someone had entered the house by breaking out a pane of glass on the door and unlocking it.
[4] One of the locks on the door was a deadbolt which required a key to be unlocked. Had this deadbolt been locked, whoever initially broke into the house would have been forced to break the door in to gain access.
[5] Triplett's expert swore that Triplett's behavior was safe and the crime was unforeseeable. Stevens's expert testified to the contrary.