# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-CA-01945-SCT

*ROSIE THOMAS, INDIVIDUALLY AND ON
BEHALF OF THE WRONGFUL DEATH
BENEFICIARIES OF WILSON THOMAS, JR.,
DECEASED*

*v.*

*THE COLUMBIA GROUP, LLC; THE COLUMBIA
GROUP, LLC d/b/a SHADY LANE APARTMENTS*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/23/2006 |
| TRIAL JUDGE: | HON. MIKE SMITH |
| COURT FROM WHICH APPEALED: | YAZOO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES ASHLEY OGDEN |
| ATTORNEYS FOR APPELLEE: | WALKER REECE GIBSON |
| | MICHAEL WAYNE BAXTER |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | REVERSED AND REMANDED - 11/29/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., GRAVES AND RANDOLPH, JJ.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     This appeal arises from a wrongful-death action in which the Plaintifft, Rosie Thomas,

individually and on behalf of the wrongful-death beneficiaries of Wilson Thomas, Jr.,

deceased ("Thomas"), alleges negligence against Defendants, The Columbia Group, LLC,

The Columbia Group, LLC d/b/a Shady Lane Apartments ("Shady Lane").

¶2.     On July 27, 2004, in the Circuit Court of Yazoo County, Thomas filed a complaint

alleging negligent security, failure to warn, and failure to maintain the apartment complex

in a reasonably safe condition. The complaint further alleged that Shady Lane's negligence caused the shooting and death of Wilson Thomas, Jr., on August 1, 2003. The complaint was amended March 21, 2005, and the amended complaint was answered May 5, 2005.

¶3.     On February 16, 2006, Shady Lane filed a motion for summary judgment. Arguments on the motion for summary judgment were heard on April 24, 2006, before Judge Jannie Lewis. Four days later, Judge Lewis entered an order denying Shady Lane's motion for summary judgment. On August 3, 2006, citing a newly published case, Shady Lane renewed its motion for summary judgment. The renewed motion was argued before a special judge, Judge Mike Smith,[1] who granted the motion for summary judgment.

¶4.     Thomas then filed a motion for new trial, amendment of judgment, judgment notwithstanding the verdict, relief from judgment, and a separate motion to reconsider. Judge Smith entered an order denying Thomas's motions on October 16, 2006, and Thomas filed a notice of appeal on November 7, 2006.

¶5.     On appeal is the issue of whether the trial court improperly granted Shady Lane's motion for summary judgment. We hold that these are issues of material fact, thus the trial court erred in granting summary judgment. We reverse and remand.

### STATEMENT OF FACTS

¶6.     Shady Lane is an apartment complex in Yazoo City controlled by The Columbia Group and subsidized by the United States Department of Housing and Urban Development (HUD). Wilson Thomas, Jr., lived at Shady Lane Apartments with his girlfriend, Teresa

---

[1]Judge Lewis was out on medical leave at this time.

Mitchell, for approximately two years. Thomas was not listed on the lease, but the manager, Catherine Washington, knew or had reason to know that he was living there, and did not seem to have any problem with it.

¶7. Shady Lane is located in a high-crime area. Sometime in the late 1980s Shady Lane hired armed security guards to patrol the property. In the late 1990s Shady Lane installed an iron fence around the entire property. There was only one entrance to the property, and it was controlled by a guard stationed in a booth to monitor who entered and exited the property. Around 2000, the guards were removed and within a few months replaced by security cameras located around the entire property.

¶8. On Thursday, July 24, 2003, Wilson Thomas was shot by Cornelius Young after trying to calm an argument between Young and his girlfriend. The shot merely grazed Thomas, but he required medical treatment and later that day filed a police report. The apartment manager was informed of the shooting, and held a meeting to discuss what to do about it. The apartment manager said that she was going to get security and keep Young off the property. This was not enforced.

¶9. On August 1, 2003, Young entered the Shady Lane property through the front gate, parked his car, got out and shot and killed Thomas.

## STANDARD OF REVIEW

¶10. This Court employs a de novo standard of review when reviewing orders granting or denying summary judgment. *Mantachie Natural Gas v. Miss. Valley Gas Co.*, 594 So. 2d 1170 (Miss. 1992). The moving party must show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss.

R. Civ. P. 56(c). "Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite." *Titus v. Williams*, 844 So. 2d 459, 464 (Miss. 2003). All evidence, including admissions in pleadings, answers to interrogatories, depositions and affidavits must be viewed in the light most favorable to the party against whom the motion has been made, as "he is given the benefit of every reasonable doubt." *Spartan Food Sys., Inc. v. American Nat'l Ins. Co.*, 582 So. 2d 399, 402 (Miss. 1991).

## DISCUSSION

¶11. At issue is whether the trial court properly granted Shady Lane's motion for summary judgment. The traditional elements of negligence are duty or standard of care, breach of that duty, proximate causation, and damages or injury. *Lyle v. Mladinich*, 584 So. 2d 397, 398 (Miss. 1991). The analysis of premises liability involves three steps: first, the court must determine the status of the injured party as invitee, licensee, or trespasser; second, based on the injured's status, the court must determine what duty the landowner/business operator owed the injured party; and third, the court must determine whether the landowner/business operator breached the duty owed the injured party. *Little ex rel. Little v. Bell*, 719 So. 2d 757, 760 (Miss. 1998). In this case, damages clearly consist of the death of Wilson Thomas, but we will discuss each of the other elements in turn.

### I.    Status.

¶12. A person is considered an invitee if he enters the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage. *Holliday v. Pizza Inn, Inc.*, 659 So. 2d 860, 865 (Miss. 1995). A person is considered a licensee if he

4

enters the property of another for his own convenience, pleasure or benefit pursuant to the license or implied permission of the owner, and a person is considered a trespasser if he enters the property of another without license, invitation or other right. *Id.*

¶13. The Plaintiff contends that Thomas was an invitee at the time of the shooting. In *Joiner v. Haley*, 777 So. 2d 50, 52 (Miss. 2000), this Court stated that "it would appear that an invited guest on the premises of rental property would be afforded the same protections extended to the tenant." This Court also has noted that in multi-unit apartment buildings, where the owner expressly or impliedly reserves parts for common use, "[i]t is the landlord's duty to keep safe such parts over which he reserves control, and, if he is negligent in this respect, and personal injury results to a tenant *or to a person there in the right of the tenant*, he is liable in tort." *Lucas v. Miss. Hous. Auth. No. 8*, 441 So. 2d 101, 103 (Miss. 1983) (quoting *Turnipseed v. McGee*, 236 Miss. 159, 109 So. 2d 551 (1959)). It is undisputed that, at the very least, Thomas was an invited guest of tenant Theresa Mitchell and therefore was afforded the same protections extended to the tenant.

¶14. Plaintiff contends that Thomas was living at the apartments and that the manager knew he was living there. Shady Lane argues that the manager had no knowledge that Thomas was living there, and that he was not listed on the lease and therefore not a legal tenant. Plaintiff also notes that Shady Lane derived a benefit from Thomas living on the property, and as such meets the "for-their-mutual-advantage" portion of the definition of invitee. Thomas made monetary contributions in the form of paying for laundry at the apartment laundromat and paying Mitchell's maintenance bill. There is suitable evidence that Thomas was at Shady Lane under the implied invitation of the owner, and for their

5

mutual benefit. Giving Thomas the benefit of every reasonable doubt for the purposes of summary judgment, it should be concluded that he was an invitee.

## II. Duty.

¶15. Having characterized Thomas as an invitee, the duty owed is simply an issue of law already established by this Court. A landowner owes an invitee the duty to keep the premises reasonably safe, and when not reasonably safe, to warn only where there is hidden danger or peril that is not in plain and open view. *Titus*, 844 So. 2d at 467. In *Gatewood v. Sampson*, 812 So. 2d 212, 219-220 (Miss. 2002) (quoting *Lyle v. Mladinich*, 584 So. 2d 397 (Miss. 1991)), the Court stated that "[t]he duty imposed upon a business proprietor to protect a patron from assaults by other patrons is that the business owner, though not an insurer of the invitee's safety, has a duty to exercise reasonable care to protect the invitee from reasonably foreseeable injury at the hands of the other patrons." The Court went on to clarify that the area where the duty is owed extends to the parking area around the building. *Id.* This means that in the current situation for the purposes of summary judgment, Shady Lane owed Thomas a duty to exercise reasonable care to protect him from reasonably foreseeable injury at the hands of Young.

¶16. Shady Lane argues that Thomas was owed no duty because he was in a position to observe and fully appreciate the peril he was in. In *Titus* the Court upheld a summary judgment, stating that "it is a general rule of law that the duty to warn disappears entirely when it is shown that the injured person did, in fact, observe and fully appreciate the peril." *Titus*, 844 So. 2d at 467. Whereas the statement in *Titus* certainly is true, the facts of this case are significantly different than those of *Titus*. In *Titus*, the victim intervened in an

6

argument between the shooter and a third party at approximately 9:00 p.m. in a convenience store parking lot. *Id* at 462. The crowd was peacefully dispersed. *Id*. Some forty minutes later, the victim returned to the parking lot and was spotted by the shooter. *Id* at 463. At this point the shooter fired two shots at the victim, missed, and the victim fled. *Id.* Twenty minutes later the victim *again* returned to the parking lot, but this time *the victim approached the shooter and attacked him*. *Id*. The shooter then retrieved his gun and killed the victim. *Id*. at 464.

¶17.    In *Titus*, the entire affair from first confrontation to shooting took just over an hour. *Id.* at 463-64. In this case, Young first fired at Thomas on July 25, 2003, and the next interaction, the second shooting, did not occur until a week later on August 1, 2003. In *Titus*, the victim approached the shooter and attacked him, at which time the shooter retrieved his gun and killed the victim. *Titus*, 844 So. 2d at 463-64. In this case, Thomas was simply sitting in the Shady Lane parking lot when Young pulled up, parked his car, got out and shot Thomas. Thomas did not say anything to Young. Thomas did not have a weapon. Thomas did nothing to instigate the shooting.

¶18.    The distinction is clear. In one situation, a victim willfully placed himself in peril. He attacked the shooter even though he knew that the shooter was currently armed and willing to use the weapon. He assumed the risk. In this case, Thomas tried to break up a fight between Young and Young's girlfriend and was shot at by Young. A full week later, Thomas had not gone after Young, but instead was sitting with two friends in the parking lot when *he was approached by Young*. It was an unprovoked attack. Shady Lane repeatedly refers to an ongoing feud between Thomas and Young. However, there is no evidence in the

record to support this. Giving Thomas the benefit of every reasonable doubt for the purposes of summary judgment, it should be concluded that Shady Lane did in fact owe him a duty to exercise reasonable care to protect him from reasonably foreseeable injury.

### III. Breach of Duty/Proximate Cause.

¶19. Shady Lane argues that the shooting was an intervening and superceding cause of Thomas's death. However, this Court has found that for an "intervening and superceding cause to extinguish liability of the original actor, the cause must be *unforeseeable*." *Newell v. S. Jitney Jungle Co.*, 830 So. 2d 621, 623 (Miss. 2002) (emphasis added). In this case the cause was *not* unforeseeable.

¶20. In order to establish legal causation, or foreseeability, in cases of assault by a third person, one must show actual or constructive knowledge of the assailant's violent nature, *or* actual or constructive knowledge that an atmosphere of violence exists on the premises. *Gatewood*, 812 So. 2d at 220. Evidence of an existing atmosphere of violence may include "the overall pattern of criminal activity prior to the event in question that occurred in the general vicinity of the defendant's business premises, as well as the frequency of criminal activity on the premises." *Lyle v. Mladinich*, 584 So. 2d at 399.

¶21. This case presents both. The apartment manager at Shady Lane knew about the first shooting at least two days after it happened. Even if she did not hear about the shooting until two days after it happened, it was still several days before the second shooting, resulting in Thomas's death, occurred. There is even testimony that the apartment manager "knew something like this was going to happen," and that she was going to do something about it. As to the existing atmosphere of violence, there is evidence in the record of several previous

8

shootings on the premises and lots of fighting. Specifically, there were more than five shootings at Shady Lane prior to the incident between Thomas and Young, each of which resulted in death: Matthew Wright in 1993; Harry Smith in 1995; James Clark in 1996; and two unidentified Mexican men in 2002. Again, testimony shows that the apartment manager was aware of these occurrences. In this situation, there is at least enough evidence of foreseeability to establish a question of material fact for the jury to determine.

¶22. Shady Lane also argues, and the trial court relied on, the notion that Thomas "can't put together a set of facts to prove that the defendants did anything to cause Young to kill Thomas." Plaintiff argues that if Shady Lane had maintained security guards at the gate, and maintained the banned list, Young would not have gotten on the property to shoot Thomas. This Court has held that "[p]roximate cause arises when the omission of a duty contributes to cause an injury." *Crain v. Cleveland Lodge 1532, Order of Moose, Inc.*, 641 So. 2d 1186, 1192 (Miss. 1994) (quoting *Drummond v. Buckley*, 627 So. 2d 264, 270 (Miss. 1993)). The apartment manager stated that she was going to evict Young, and that she was going to get security and ban Young from the premises. This was not done. In *Crain*, the Court found that no evidence was presented in the record showing a causal link between a lack of security measures and the injury sustained. *Id.* In this case, however, there is direct evidence from experts Tyrone Lewis and John Tisdale that Shady Lane's failure to follow through with security proximately caused the second shooting of Wilson Thomas. This testimony from experts, coupled with the manager's statement that she was going to ban and evict Young as well as improve security, is clearly an issue of material fact that should be determined by a jury.

9

**CONCLUSION**

¶23.    Based on the foregoing analysis, we conclude that there are issues of material fact, and that the trial court erred in granting summary judgment as a matter of law.  As such, the trial court's decision is reversed and remanded for trial.

¶24.    **REVERSED AND REMANDED.**

**WALLER AND DIAZ, P.JJ., EASLEY, CARLSON, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR.  GRAVES, J., CONCURS IN RESULT ONLY.**