BARNES, J., for the Court:
¶ 1. Tangela Berry, now Tangela Banks, and Ricky Banks (the Bankses), as next of kin and Mend to the minor, Ry-heim Banks, filed an action in Adams County Circuit Court, alleging medical negligence by Tom Carey, M.D., Natchez Community Hospital, Donielle Daigle, M.D., OB-GYN Clinic Inc. (OB-GYN), Laura Carpenter, and Jane Does 1-4.[1] Separate settlements were reached between the Bankses and Carpenter and Natchez Community Hospital on April 10, 2012, after jury selection was conducted.[2] The jury trial continued against defendants Dr. Carey and OB-GYN. On April 18, 2012, the jury returned a verdict in favor of the remaining defendants.[3]
*651 ¶ 2. After the final judgment was entered on May 14, 2012, the Bankses filed a timely motion for a judgment notwithstanding the verdict (JNOV), or in the alternative, for a new trial. The circuit court denied the motion, and the Bankses now appeal. Finding no error, we affirm the judgment.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 3. In 2003, the Bankses learned they were expecting a child together. Tangela sought prenatal care from Dr. Carey, a physician and partner with OB-GYN. On September 24, 2003, when Tangela was approximately twenty-six weeks pregnant, she was admitted to Natchez Community Hospital with contractions, elevated blood pressure, fluid in her lower extremities, and an abnormal level of protein in her urine. Dr. Carey had Tangela transferred by ambulance to the University of Mississippi Medical Center (UMMC) in Jackson, Mississippi. Upon arrival at UMMC, it was determined that Tangela had suffered a “placental abruption” and an emergency caesarean section was performed. Test results on the child, Ryheim, revealed that he had been deprived of oxygen, causing severe mental and physical retardation.
¶ 4. On June 4, 2004, the Bankses, on Ryheim’s behalf, filed a complaint alleging medical negligence against Dr. Carey, OB-GYN, and the others. A jury trial was held from April 10-18, 2012. As noted, the Bankses reached a settlement with Carpenter and Natchez Community Hospital on the first day of the trial. After the trial concluded, the jury returned a verdict in favor of Dr. Carey and OB-GYN.
¶ 5. The Bankses filed a motion for a JNOV, or in the alternative, for a new trial, arguing that improper comments by a former partner of OB-GYN, who was an observer at the trial, were an attempt to influence the jury and warranted a mistrial. The circuit judge entered an order on October 4, 2012, denying the motion. The Bankses now appeal, and upon review, we find no error and affirm the circuit court’s judgment.
DISCUSSION
¶ 6. In their post-trial motion, and on appeal, the Bankses argue that Dr. William Godfrey, a retired physician and former partner with OB-GYN, made improper comments during the trial that constituted an attempt to influence the jury. Therefore, they claim that the circuit court erred by failing to conduct a proper investigation into the alleged misconduct and grant its motion for a new trial.
I. Whether statements made by a trial spectator improperly influenced the jury.
¶ 7. In an affidavit attached to the post-trial motion, the attorney for the Bankses attested that he witnessed Dr. Godfrey snidely comment to another trial spectator, within proximity of the jury, that he intended to return after lunch recess and listen to the rest of the “bulls* *t” from the plaintiffs expert. Counsel immediately reported this conduct to the judge, who admonished Dr. Godfrey to be more quiet with his remarks. Later, counsel also reported that the wife of the plaintiffs’ expert witness told him Dr. Godfrey had verbally greeted one of the jurors, Linda Bailey, and had made the comment, “[H]e’s a hired gun and he should be shot,” to Bailey, presumably regarding the expert witness.
¶ 8. Also attached to their post-trial motion was an affidavit by an investigator who had interviewed a juror in the case after the trial was completed. This juror, Margaret Hinson, told the investigator *652 that when Bailey returned to the jury room after lunch, Bailey said she hoped she was not in trouble because she had been approached by Dr. Godfrey. Hinson told the investigator that Bailey said Dr. Godfrey stated Dr. Carey was a good man and that “[Bailey] needed to vote for him.”
¶ 9. The Bankses assert that Dr. God-frey’s comments were intended to influence the jury. In addition, as a retired partner of OB-GYN, they claim that Dr. Godfrey was, essentially, a party to the litigation and had a “vested interest in the outcome of the trial.” Thus, his alleged misconduct warranted a new trial.
¶ 10. It is clear from the record that Dr. Godfrey was not a named party or a witness to the proceedings; he was merely a courtroom spectator. Although the Bankses claim that Dr. Godfrey’s relationship with the plaintiffs was not known to them prior to trial, according to the Appel-lees, Dr. Godfrey was listed as an employee of OB-GYN in their response to interrogatories dated September 24, 2003. Several years later at trial, during the in-chamber discussion regarding Dr. God-frey’s alleged comments, his former work relationship with OB-GYN was discussed. The circuit court judge noted that Dr. Godfrey had since been “retired for a number of years.”[4] The Bankses admit that the knowledge of Dr. Godfrey’s identity prior to trial “would not, and could not, have prevented [his] wrongful conduct.” Moreover, counsel never moved for a mistrial based on Dr. Godfrey’s relationship with OB-GYN or his alleged misconduct. See Miss. Gaming Comm’n v. Baker, 755 So.2d 1129, 1133 (¶ 10) (Miss.Ct.App.1999) (issues not objected to or presented to circuit court for a decision at trial may not be considered for error on appellate review) (citations omitted).
¶ 11. When the circuit judge was informed of the allegations of improper conduct by Dr. Godfrey, he promptly brought Bailey, an alternate juror, into his chambers for questioning. Bailey told the judge that she saw Dr. Godfrey at lunch and that he had approached her, stating that he had worked with Dr. Carey.
BY JUROR BAILEY: [Dr. Godfrey] asked me if I was on the jury.
BY THE COURT: Okay.
BY JUROR BAILEY: I was at lunch, and I still had my button on, and I said yes. And he said, “Dr. Carey’s.” And I said, ‘Tes, but don’t say anything.” And he said, “I just want to tell you he’s — I’ve practiced with him.” And I said, “Don’t say anything,” and so that’s really all he said. He started and stopped.
Bailey claimed that she immediately halted the conversation before Dr. Godfrey could speak further. She denied having any professional or social relationship with Dr. Godfrey.
¶ 12. Bailey also denied hearing Dr. Godfrey make any comment about the plaintiffs’ expert witness.
BY THE COURT: Now it’s been stated that Dr. Godfrey when he came in, he was making some statements that other people around could hear about one of the experts. Do you remember hearing anything about that? About maybe saying one of them was a hired gun[?]
BY JUROR BAILEY: No.
BY THE COURT: — something like that?
BY JUROR BAILEY: No. No. I didn’t. He never said anything like that, and he — I hadn’t heard that. *653 Bailey averred that she could be fair and impartial.
¶ 13. Consequently, the judge concluded that any comment by Dr. Godfrey did not influence or “contaminate” Bailey from serving as a juror. Moreover, Bailey was never chosen to be on the jury; she remained an alternate and, thus, did not participate in jury deliberations. Therefore, we find no error in the court’s finding that Dr. Godfrey’s remarks did not influence the jury.
II. Whether the circuit court erred by refusing to conduct an investigation into the Bankses’ allegations of party misconduct.
¶ 14. The Bankses alternatively argue that the circuit court should have conducted an investigation based on the allegation of misconduct by Dr. Godfrey. Mississippi Rule of Evidence 606(b) states:
Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury’s deliberations or to the effect of anything upon his or any other juror’s mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury’s attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.
The Bankses contend that without the circuit court’s investigation, we cannot know whether Dr. Godfrey’s alleged communications “altered the verdict.”
¶ 15. Addressing allegations of juror misconduct, this Court has noted that once the circuit court is made aware of the allegation of misconduct, it must then determine “whether an investigation is warranted.” Perkins v. Dauterive, 882 So.2d 773, 781 (¶ 27) (Miss.Ct.App.2004) (citing Gladney v. Clarksdale Beverage Co., 625 So.2d 407, 418 (Miss.1993)).
An investigation is warranted if there is sufficient evidence to conclude that good cause exists to believe that there was in fact an improper outside influence or extraneous prejudicial information. Although a minimal standard of a good cause showing of specific instances of misconduct is acceptable, the preferable showing should clearly substantiate that a specific, non-speculative impropriety has occurred. The showing must be adequate to overcome the presumption in Mississippi of jury impartiality.

Id.

¶ 16. In the present case, the Bankses did not provide any evidence that a “specific non-speculative impropriety” occurred. It was never shown whether Dr. Godfrey’s comments were actually heard by any member of the jury. The only evidence provided was an affidavit by their investigator, post-trial, claiming that juror Hinson told him Bailey talked to Dr. God-frey and that he had told Bailey that Dr. Carey was a good man and to vote for him. Clearly, the information contained in the affidavit is hearsay. See Gatewood v. Sampson, 812 So.2d 212, 218-19 (¶¶ 7, 9) (Miss.2002) (finding that an affidavit containing information “twice removed from the original [juror/jdeclarant” was not exempt from hearsay exceptions and did “not rise to the necessary level of proof required to conduct an investigation”). It also contradicts Bailey’s testimony before the circuit judge in his chambers. Moreover, Hinson voted in favor of the plaintiff; *654 so, clearly, she was not prejudiced by any alleged statement.
¶ 17. Once allegations of the contact between Dr. Godfrey and Bailey were brought to the circuit judge’s attention, he immediately brought Bailey in for questioning. As noted, Bailey told the judge that Dr. Godfrey merely told her he had worked with Dr. Carey. Bailey also denied she heard any improper comments made by Dr. Godfrey during the course of the trial. Accordingly, we find that the Bankses have not overcome the presumption of jury impartiality, and this issue is without merit.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF ADAMS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. Tangela is interchangeably referred to as either Tangela Berry or Tangela Banks in the various courts’ filings. However, as the Appellants' brief notes that the couple is now married, we refer to Tangela by her married name.

. A settlement had been reached with Carpenter in 2005; however, three years later, the Bankses moved to set aside the settlement. The chancery court granted their motion, and on appeal, the Mississippi Supreme Court affirmed the chancellor’s setting aside of the settlement, and reversed the settlement of the Bankses’ individual claims against Carpenter. See Carpenter v. Berry, 58 So.3d 1158 (Miss. 2011). Therefore, Carpenter was reinstated as a defendant in October 2011.
After these separate settlements were reached in 2012, final orders of dismissal were entered for Carpenter and Natchez Community Hospital on May 24, 2012.

.A notice of dismissal was entered for Dr. Daigle, another physician employed with OB-GYN, on July 30, 2004. Jane Does 1-4 are fictitious parties, who were only identified in the original complaint as the "charge nurse, nurse manager, supervisor of nursing, and the director of nursing for Natchez Community Hospital.” However, it is apparent from the record that the plaintiffs never specifically designated the name any of these parties in any amended pleadings. See M.R.C.P. 9(h) ("When a party is ignorant of the name of an opposing party and so alleges in his pleading, the opposing party may be designated by any name, and when his true name is discovered the process and all pleading and proceedings in the action may be amended by substituting the true name and giving proper notice to the opposing parly.”); see also McHazlett v. Otis Eng’g Corp., 133 Ariz. 530, 652 P.2d 1377, 1379 (1982) (holding that the "unserved named defendants and the fictitious defendants in this case are not 'parties’ within the meaning of Rule 54(b)”).

. The Appellees note that Dr. Godfrey is no longer a partner/shareholder of OB-GYN and is not subject to any personal liability as a result of the lawsuit.