# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CA-00425-SCT

*CAROL RENEE SIMPSON*

*v.*

*MICHAEL W. BOYD*

| | |
|---|---|
| DATE OF JUDGMENT: | 1/28/2003 |
| TRIAL JUDGE: | HON. RICHARD A. SMITH |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | CHARLES T. YOSTE |
| | STEPHANIE L. MALLETTE |
| ATTORNEYS FOR APPELLEE: | GAINES S. DYER |
| | L. CARL HAGWOOD |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART; AND VACATED AND REMANDED IN PART - 08/26/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Carol Renee Simpson appeals from a summary judgment which dismissed her complaint and civil action for damages against her former employer, attorney Michael W. Boyd, arising from injuries inflicted by an intruder while Simpson was at work. Simpson sued Boyd, claiming that (1) Boyd's failure to provide a safe work environment was the proximate cause of her injuries, (2) Boyd's failure to comply with city building codes

constituted negligence per se, and (3) Boyd negligently advised Simpson to file for bankruptcy without informing her of the possibility of bringing a lawsuit against himself or the attacker.

¶2.     In granting summary judgment, the Washington County Circuit Court discussed the first two of Simpson's claims, but failed to address her third claim for legal malpractice. We affirm the trial court's judgment with respect to Simpson's first claim, reverse and remand with respect to the second, and vacate and remand with respect to the undecided third issue in light of the fact that it is inappropriately before this Court.

**FACTS**

¶3.     The law office of bankruptcy attorney Michael W. Boyd, located in Greenville, Mississippi, has been the site of occasional moments of discord. At one point, one of Boyd's employees had to call the police after Boyd got into a fracas with one of his clients. One client called Boyd on the phone and made a number of threats. Renee Simpson testified that once every other month an agitated client would cause some type of disturbance in the office. One time, the irate acquaintance of a co-worker came to the office and caused such a scene that the police had to be called. An office window was broken on two different occasions after office hours. Late one night, Boyd's car window was broken as well.

¶4.     The incident at issue happened one morning in December of 1999, when a man who was not one of Boyd's clients walked into the office. Two of Boyd's employees, including Simpson, were in the back of the office. Simpson heard someone enter the office and went through a set of French doors into the waiting room area where she encountered Earl

2

Washington. She then walked back through the doors and into the receptionist's area to see if Washington had an appointment.

¶5. Washington asked for information regarding an aggravated assault defense, but Simpson told him that their office did not handle that type of case. Washington demanded to see the attorney. After Simpson told him the attorney was not there, he pulled a gun on her. Washington then told Simpson that she was going to come with him.

¶6. Simpson alleged that her escape was prevented because Boyd had locked the rear exit door in the receptionist's area with a keyed deadbolt and had also blocked the door with a copy machine. Washington came through the French doors to his left, down the short length of the hallway, and into the reception area where Simpson stood. Simpson did not call out for help for fear of her co-worker's safety, nor did she have time to dial 911.

¶7. Washington forced Simpson out of the office and into his vehicle which he drove to a levee area close to the Mississippi River. He sexually assaulted Simpson while they were in the car. Simpson then ran from the car, but Washington shot her in the legs and buttocks, preventing her escape. Simpson's ordeal ended when the police arrived and arrested Washington.

¶8. Simpson sued Boyd for compensatory damages, punitive damages, attorney's fees, and court costs on the bases of premises liability, negligence per se, and legal malpractice.

## DISCUSSION

*Standard for Summary Judgment*

¶9. In determining whether the trial court properly granted a motion for summary judgment we conduct a de novo review of the record. ***Palmer v. Anderson Infirmary***

3

*Benevolent Ass'n*, 656 So. 2d 790, 794 (Miss. 1995). A trial court may grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56 (c). A fact is material if it "tends to resolve any of the issues properly raised by the parties." *Palmer*, 656 So. 2d at 794.

¶10. Furthermore, "[a] motion for summary judgment should be overruled unless the trial court finds, beyond a reasonable doubt, that the plaintiff would be unable to prove any facts to support his claim." *Id.* at 796. The trial court is prohibited from trying the issues; it may only determine whether there are issues to be tried. *Id.*

¶11. The evidence must be viewed in the light most favorable to the non-moving party, in this case, Simpson. *Id.* at 794. If, in this view, the moving party, Boyd, is entitled to a judgment as a matter of law, then summary judgment should be granted in his favor. Otherwise, the motion should be denied. *Id.*

¶12. In this negligence action, Simpson bears the burden of producing evidence sufficient to establish the existence of the conventional tort elements of duty, breach, proximate causation, and damages. *Id.* Duty and breach of duty, which both involve forseeability, are essential to finding negligence and must be demonstrated first. *Donald v. Amoco Prod. Co.* 735 So. 2d 161, 174 (Miss. 1999).

¶13. Therefore, Simpson must rebut Boyd's showing that no genuine issue of material fact exists by producing supportive evidence of significant and probative value. *Palmer*, 656 So. 2d at 794. This supportive evidence must show that the Boyd breached the established

standard of care and that such breach was the proximate cause of Simpson's injury. *Id.* Finally, summary judgment should be granted with great caution. *Id.*

*Premises Liability*

¶14.    Simpson claims Boyd owed her a duty to provide a safe place to work and a duty to provide for her security. Although not an insurer of an invitee's safety, a premises owner owes a duty to exercise reasonable care to protect the invitee from reasonably foreseeable injuries at the hands of another. *Newell v. S. Jitney Jungle Co.*, 830 So. 2d 621, 623 (Miss. 2002). We have stated two ways a plaintiff can prove forseeability for the purposes of establishing a duty in premises liability cases: (1) that the defendant had actual or constructive knowledge of the assailant's violent nature, or (2) actual or constructive knowledge an atmosphere of violence existed on the premises. *Gatewood v. Sampson*, 812 So. 2d 212, 220 (Miss. 2002). Simpson's complaint attempts to prove foreseeability by establishing that an atmosphere of violence existed.

¶15.    We have previously decided two cases which involved the "atmosphere of violence" question. *See id.*; *Crain v. Cleveland Lodge 1532*, 641 So. 2d 1186 (Miss. 1994).

¶16.    In *Crain*, we affirmed summary judgment in favor of a business owner when a patron suffered injury from attack in the owner's parking lot. *Gatewood*, 812 So. 2d at 220. We opined that it would be "difficult to say the assault on [the plaintiff in that case] was foreseeable" despite the fact that there was evidence of violent acts within two blocks of the business which included: 110 commercial burglaries, three residential burglaries, eleven assaults, 152 larcenies, one bomb threat, and one indecent exposure. *Id.* at 221. However, we opted not decide the issue of foreseeability and instead affirmed summary judgment on

5

the basis of a total lack of evidence regarding proximate causation. *Id.* Consequently, our language regarding the atmosphere of violence in *Crain* was dicta and is not controlling in the area of law pertaining to the "atmosphere of violence" theory.

¶17. Our holding in *Gatewood* is controlling in this case. In *Gatewood*, we affirmed the trial court's decision to deny a business owner's motions for judgment notwithstanding the verdict and directed verdict. *Id.* at 219. The defendant in that case argued that there was not enough evidence for the jury to find that an atmosphere of violence existed at the gas station where the plaintiff was injured. *Id.* at 220. The evidence showed that sixty violent crimes were reported to the police in the surrounding neighborhood within the three years prior to the attack. *Id.* Thirty-two of the reported crimes occurred in a nearby shopping center; two incidents occurring in close proximity to the gas station; and at one point, a fight broke out on the premises of the gas station. *Id.*

¶18. We held that evidence of the existence of an atmosphere of violence may include "the overall pattern of criminal activity prior to the event in question that occurred in the general vicinity of the defendant's business premises, as well as the frequency of criminal activity on the premises." *Id.* at 220. Based on the evidence before the trial court, we held that the activity which occurred on and around the premises was enough to create a factual question of whether an atmosphere of violence existed. *Id.*

¶19. Unlike the plaintiff in *Gatewood*, Simpson has not presented facts sufficient to create a jury issue on the duty prong of a prima facie case of negligence. In order to surmount a motion for summary judgment, Simpson must offer evidence which indicates that incidents in and around the office provided notice to Boyd that precautionary measures were necessary

6

to prevent the occurrence of a crime like the one perpetrated by Washington against Simpson.

¶20.    As proof of Boyd's constructive knowledge of the alleged violent atmosphere, Simpson offers the following: (1) An irate client and an acquaintance of a co-worker separately caused such a stir that the police had to be called; (2) a handful of verbal exchanges between clients and Boyd; and (3) a couple of minor criminal instances over a three-year period.

¶21.    Finally, Simpson's expert testified by way of affidavit that it was his opinion that Boyd's office is located in a high crime area based on: (1) Boyd's off-the-cuff remark in a deposition that "the entire city of Greenville is described as a high-crime area"; (2) Simpson's general remarks that the area was a dangerous, high crime area; (3) the in-office incidents referred to above; and (4) Boyd's decision to install a panic button and security system in the building.

¶22.    These incidents do establish that employees at Boyd's office could expect to deal with irate clients, that minor acts of vandalism might happen after hours, that both Simpson and Boyd have made sweeping generalizations about the safety of the surrounding area, and that Boyd was willing to take precautionary measures for any number of security reasons. However, such incidents do not rise to the level of violence sufficient to create a factual question as to whether Boyd was on constructive notice that an act of violence like that committed by Washington would happen in his office.

¶23.    Simpson has not demonstrated an "overall pattern of criminal activity prior to the event in question that occurred in the general vicinity of the defendant's business premises"

7

nor has she demonstrated any "frequency of criminal activity on the premises" sufficient to establish at atmosphere of violence. To lower the bar to this level would open the door to nearly per se liability for premises owners.

¶24. Therefore, since Simpson cannot meet the duty prong in her negligence claim, she has not made out a prima facie case for premises liability, and the trial court appropriately granted summary judgment with respect to this claim.

*Negligence Per Se*

¶25. Simpson next alleges that Boyd can be held liable for negligence per se under the City of Greenville's Life Safety Code, adopted as part of its Fire Prevention Code. The Code provides:

> Every building . . . designed for human occupancy shall be provided with exits sufficient to permit the prompt escape of occupants in case of fire *or other emergency*. The design of exits and other safeguards shall be such that reliance for safety to life in case of fire *or other emergency* will not depend solely on any single safeguard . . . In every building or structure, exits shall be so arranged and maintained so as to provide free and unobstructed egress from all parts of the building or structure at all times when it is occupied.

> No lock or fastening shall be installed to prevent free escape from the inside of any building. Two means of egress, as a minimum, shall be provided in every building or structure . . . The two means of egress shall be arranged to minimize the possibility that both may be impassable by the same fire *or emergency situation*.

(emphasis added).

¶26. Mississippi recognizes the doctrine of negligence per se, which essentially provides that breach of a statute or ordinance may render the offender liable in tort without proof of lack of due care. **Palmer**, 656 So. 2d at 796. Violation of a statute or ordinance constitutes negligence per se and will support a cause of action in tort where (1) the plaintiff is within

8

the class protected by the statute, and (2) the harm sustained is the type sought to be prevented by the statute. *Id.* Even if a defendant breaches a statutory duty and is within the class protected by the violation, the plaintiff must still show that the violation proximately caused the injury. *Id.* The presence of "intentional criminal acts of third parties do not, by definition, relieve [Boyd] of liability," eliminating the need to consider the issue of proximate causation. *Whitehead v. Food Max of Miss. Inc.*, 163 F.3d 265, 272 (5th Cir. 1998) (interpreting Mississippi law)(citing *O'Cain v. Harvey Freeman & Sons, Inc.*, 603 So. 2d 824, 830 (Miss. 1991)). Moreover, "the question of superceding intervening cause is so inextricably tied to causation, it is difficult to imagine a circumstance where such an issue would not be one for the trier of fact." *O'Cain*, 603 So. 2d at 830.

¶27. The Code was written with the intention of protecting parties from the resulting harm of fires and other emergencies. When confronted by Washington Simpson was faced with an emergency situation, and Simpson alleges that the locked door with a copy machine in front of it blocked her only possible means of escape in violation of the Code. She meets the requirements for the duty and breach prongs based on negligence per se case because: (1) the ordinance applies to buildings "designed for human occupancy" and therefore was meant to protect people in general; and (2) the harm of emergency without means of escape which Simpson allegedly experienced was the type sought to be prevented by the Code.

¶28. However, Boyd mainly argues that there was no possibility that the blocked door could have been the proximate cause of Simpson's injuries. He contends that her claim for proximate causation fails because (1) there are no facts alleged which, if proven, would show

9

that Simpson even had time to get to the door, and (2) it was unforeseeable to Boyd that Washington would engage in such an extraordinary criminal act.

¶29. Under the standard for summary judgment, his first argument is without merit. Boyd argues that it is "wild conjecture to suggest that Plaintiff could have obtained access to the rear exit without being injured or killed." However, Simpson claims that at one point she was actually backed up to the copier and prevented from escaping during the brief period when Washington walked down the hall. Far from being "wild conjecture," under the summary judgment standard, such proof indicates that it may have been possible for Simpson to escape at one point and make it clear that there are material facts in issue, defeating Boyd's first argument.

¶30. In regard to Boyd's second argument that Washington's criminal act was unforeseeable so as to warrant summary judgment, this argument is without merit as well. One could conceive arguments for both Boyd and Simpson regarding whether or not, as a result of violating the city's safety code, Boyd foresaw that he was creating the opportunity for a volatile emergency situation that would one day endanger one of his employees. For precisely this reason, the issue of proximate causation in this case is not appropriate for summary judgment, but must be brought before the trier of fact.

¶31. Because Simpson has brought a claim for negligence per se which has outstanding questions of proximate causation, we reverse the trial court's decision to grant Boyd's motion for summary judgment.

*Legal Malpractice*

10

¶32.    The trial court granted summary judgment dismissing Simpson's case but failed to specifically address her legal malpractice claim. Because the trial court neglected to address this issue, we vacate the trial court's decision and remand in regard to this claim.

**CONCLUSION**

¶33.    We affirm the trial court's judgment to the extent that it dismissed the premises liability claim. We reverse the judgment to the extent that it dismissed the negligence per se claim, and we remand this case for trial on that issue. We vacate the judgment to the extent that it dismissed the legal malpractice claim, and we remand this case for further proceedings on that claim.

¶34.    **AFFIRMED IN PART; REVERSED AND REMANDED IN PART; AND VACATED AND REMANDED IN PART.**

**SMITH, C.J., COBB, P.J., CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. EASLEY, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND GRAVES, JJ., NOT PARTICIPATING.**

11