# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CA-00807-SCT

*FRANCES SPANN, YOLANDA THOMAS AND*
*DEMETREAL BARBER*

*v.*

*SHUQUALAK LUMBER CO., INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/11/2007 |
| TRIAL JUDGE: | HON. JAMES T. KITCHENS, JR. |
| COURT FROM WHICH APPEALED: | NOXUBEE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | W. HOWARD GUNN |
| ATTORNEYS FOR APPELLEE: | MITZI LEASHA GEORGE |
| | TIMOTHY DALE CRAWLEY |
| | ROBERT LEE GRANT |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | REVERSED AND REMANDED - 09/11/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., EASLEY AND GRAVES, JJ.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    Frances Spann, Yolanda Thomas, and Demetreal Barber appeal the Noxubee County

Circuit Court's grant of summary judgment in favor of Shuqualak Lumber Company, Inc.

(hereinafter "Shuqualak").  Because Shuqualak had a duty not to cause an unreasonably

dangerous condition, and because genuine issues of material fact remain, we reverse the trial

court's grant of summary judgment and remand this case for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2.     Shuqualak operates a lumber-drying plant in the town of Shuqualak, Mississippi.[1]  The

plant uses a system of boilers and dry kilns to remove moisture from green lumber.  W.

Anderson Thomas, Jr., who serves as vice president of Shuqualak, described the operation

as follows:

> The process begins by heating water in the boilers to create high volumes of
> intensely-hot steam.  The resulting steam is pushed along through a closed-
> loop system to heat and dry the lumber in the dry kilns.  As the steam is
> pushed through the kilns, it cools and eventually turns back into water.  The
> water is then transported back to the boilers for re-heating, and the process
> repeats itself. . . . *The only moisture that is actually emitted into the
> atmosphere from the kilns is comprised of water that evaporates out of the
> lumber during the drying process.  The evaporated water builds up inside of
> the dry kilns, and is released, as needed, through computer-operated vents
> atop the dry kilns.*  The vents are approximately thirty feet above ground level,
> and they open to release the evaporated water when sensors inside of the dry
> kiln signify that it is necessary to do so.  Our Division operates, and thereby
> can emit this evaporated water, twenty four hours a day, seven days a week,
> and all year round.

(Emphasis added).

¶3.     Around mid-morning on October 25, 2002, Spann, along with Barber, was driving

along Floyd Loop Drive,[2] which runs adjacent to Shuqualak's plant.  At this same time,

Thomas was driving along the same road in the opposite direction.  When the two vehicles

---

[1]  The briefs of the opposing parties place the company in different locations.
Shuqualak places the company in the town of Shuqualak, but Spann uses an address in
Macon, Mississippi. This discrepancy is likely due to the fact that Shuqualak's headquarters
are located just outside the town of Shuqualak, while the plant is located inside the town.
Regardless, neither party disputes the locations of the accident or the plant.

[2]  Floyd Loop Drive is not a through road, and has limited residential traffic and no
painted lines.  The road actually was described as an alleyway without any lines or markers.

2

reached an area in front of the plant, they encountered a "dense fog, steam, and/or smoke " that covered the road. It also had recently rained, and the conditions were foggy, windy, and overcast. The two vehicles then collided, and all three occupants were sent to Noxubee General Hospital in Macon, Mississippi.[3]

¶4.    Spann, Thomas, and Barber (hereinafter collectively referred to as "Spann") filed suit in the Circuit Court of Noxubee County on July 11, 2005, asserting that the steam from Shuqualak's plant caused the accident. The complaint named Shuqualak as the sole defendant and claimed it had a duty to warn about the potential driving hazard and to reasonably abate the problem.

¶5.    On November 22, 2006, Shuqualak filed a motion for summary judgment on the basis that there is no duty under Mississippi law to warn drivers of potential steam or to abate such conditions. The court heard the parties on motion for summary judgment on March 23, 2007. Charles Henry Thomas, III, a vice president of Shuqualak, was the only witness who testified. He acknowledged that the plant produced steam and conceded the possibility that such steam had crossed over Floyd Loop Drive. Thereafter, on April 17, 2004, the trial court entered an order granting summary judgment for Shuqualak, finding that "under Mississippi law, [Shuqualak] currently has no recognized duty to abate the steam arising from its operation."

---

[3] The record does not indicate the extent of the injuries.

## STANDARD OF REVIEW

¶6.     This Court reviews a trial court's grant of summary judgment de novo. ***Callicutt v. Prof'l Servs. of Potts Camp, Inc.***, 974 So. 2d 216, 219 (Miss. 2007). In evaluating a grant of summary judgment, this Court views all evidentiary matters, including admissions in pleadings, answers to interrogatories, depositions, admissions, and affidavits. ***Glover v. Jackson State Univ.***, 968 So. 2d 1267, 1275 (Miss. 2007) (citing Miss. R. Civ. P. 56 (c)). The evidence must be viewed in the light most favorable to the non moving party. ***Simpson v. Boyd***, 880 So. 2d 1047, 1050 (Miss. 2004) (quoting ***Palmer v. Anderson Infirmary Benevolent Ass'n***, 656 So. 2d 790, 794 (Miss. 1995)). The existence of a genuine issue of material fact will preclude summary judgment. ***Massey v. Tingle***, 867 So. 2d 235, 238 (Miss. 2004). A fact is material if it "tends to resolve any of the issues properly raised by the parties." ***Simpson***, 880 So. 2d at 1050 (quoting ***Palmer***, 656 So. 2d at 794). The motion "should be overruled unless the trial court finds, beyond a reasonable doubt, that the plaintiff would be unable to prove any facts to support his claim." ***Simpson***, 880 So. 2d at 1050 (quoting ***Palmer***, 656 So. 2d at 796).

## DISCUSSION

**Whether the trial court erred in granting summary judgment for Shuqualak.**

¶7.     Spann argues that the trial court erred in finding that no genuine issue of material fact remained as to the negligence of Shuqualak. To survive summary judgment, Spann bears the

4

burden of producing evidence sufficient to establish the existence of the conventional tort elements of duty, breach, causation, and damages.

¶8.     Spann relies heavily upon *Keith v. Yazoo and NVR Co.*, 168 Miss. 519, 151 So. 916 (1934).  In *Keith*, a fire set on the railroad company's right-of-way caused dense smoke to pass over an adjacent highway. *Keith*, 168 Miss. at 522-23.  The diminished visibility caused by the smoke led to an automobile accident. *Id*. at 23.  The Court found that "a jury would be warranted in finding that the agent and employees of the railroad company might reasonably foresee that some injury might result to those who had the right to travel the public highway. " *Id*. at 523-24.  The Court noted that the driver had a right to be where he was at the time of the accident, and that a jury could infer that the railroad company was negligent in causing the smoke. *Id*.  While the term "duty" is not discussed in *Keith*, the Court implied that the railroad had a duty not to obscure drivers' visibility in such a way as to create an unreasonably dangerous condition. *See id*. at 522-24.

¶9.     We find that Shuqualak had a duty to refrain from creating an unreasonably dangerous condition that impeded drivers' vision.  With duty established, we turn to the remaining issues of breach, causation, and damages.

¶10.    Spann cites *Warren v. Allgood*, 344 So. 2d 151 (Miss. 1977), for support.  In *Warren*, a motorist alleged that he was struck from behind as he slowed down while entering a cloud of dust on the highway. *Warren*, 344 So. 2d. at 152.  The motorist claimed that this cloud originated from a liming operation in a nearby field. *Id*.  Conflicting evidence was presented at trial as to whether the cloud of dust actually was present at the time of the accident. *Id*.

5

This Court affirmed the jury's verdict that the landowners were "not [] responsible in any way for the accident." *Id*.

¶11. Likewise, in the instant case, testimony conflicts as to whether the "dense fog, steam, and/or smoke " released from Shuqualak's plant actually was present at the time of the accident. Spann stated that the steam was present at the time of the accident. Shuqualak, while not admitting that the steam was present at that particular time, denied neither that its plant emitted steam nor the potential for this steam to drift across the roadway. Even if such conditions were present, a question of fact remains as to whether the steam caused an unreasonably dangerous condition.

¶12. Finally, "[f]or a particular damage to be recoverable in a negligence action, the plaintiff must show that the damage was proximately caused by the negligence. In order for an act of negligence to proximately cause the damage, the fact finder must find that the negligence was both the cause in fact and legal cause of the damage." *Glover v. Jackson State Univ.*, 968 So. 2d 1267, 1277 (Miss. 2007) (quoting Dobbs, The Law of Torts, § 180 at 443 (2000)). A defendant's negligence is the "cause-in-fact" where the fact-finder concludes that, but for the defendant's negligence, the injury would not have occurred. *Id*. Once established, the cause-in-fact also will be the legal cause of the damage "provided the damage is the type, or within the classification, of damage the negligent actor should reasonably expect (or foresee) to result from the negligent act." *Id*. (quoting Dobbs, The Law of Torts, § 180 at 443).

6

¶13.    Both parties gave evidence that it was raining and cloudy on the day of the accident.[4] Whether the weather or the steam was the cause-in-fact of the accident is a question within the province of a jury.  Furthermore, if cause-in-fact is established, Shuqualak might reasonably foresee that an automobile accident could occur.  *See **Keith***, 168 Miss. at 522-24.

## CONCLUSION

¶14.    Because Shuqualak had a duty to refrain from causing an unreasonably dangerous condition for motorists, and because we find that genuine issues of material fact exist, we reverse summary judgment for Shuqualak and remand this case for trial.

¶15.    **REVERSED AND REMANDED.**

**DIAZ, P.J., EASLEY, CARLSON, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR.  GRAVES, J., CONCURS IN RESULT ONLY.  SMITH, C.J., NOT PARTICIPATING.**

---

[4] In reviewing pictures taken at the scene of the accident, the trial court commented that it appeared to be raining or misting.