PIERCE, Justice,
Dissenting.
¶ 19. I respectfully dissent with the majority opinion today, since I would affirm the trial court’s ruling to grant summary judgment, but for reasons other than those stated by the trial court.
¶ 20. This Court determined that the Mississippi Torts Claim Act (MTCA) is inapplicable to the facts because the Act does not extend to Alabama Trooper Walker and the State of Alabama, as they are not “employees” as defined by the Act. I agree. However, I disagree with the majority’s determination that genuine issues of material fact exist on the issue of negligence.
¶ 21. Duckworth contends that there are genuine issues of material fact on (1) *440 whether Trooper Walker’s pursuit violated the State of Alabama’s pursuit policy, and (2) whether the pursuit was too lengthy considering the circumstances. While there may be some differences in each parties’ alleged version of events, the fact remains that police officers are sworn to enforce the laws. In order to perform their duties, officers must have the ability to pursue suspects in a reasonably prudent manner; otherwise, practically speaking, no suspect could be detained short of a voluntary surrender. The most obvious dilemma for Duckworth, although not the only problem with the instant case, which will be discussed infra, is that he cannot prove the element of causation. There is no dispute that Warren collided with Duckworth’s vehicle. Thus, Warren, not Trooper Walker, is the cause in fact of the collision. This is fatal to Duckworth’s claim.
I.
¶ 22. This Court applies a de novo standard of review to a trial court’s grant or denial of summary judgment. Moss v. Batesville Casket Co., 935 So.2d 393, 398 (Miss.2006). Rule 56 of the Mississippi Rules of Civil Procedure provides that summary judgment should be granted “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Miss. R. Civ. P. 56(c). The evidence is viewed by the court in the light most favorable to the nonmoving party, and the moving party has the burden of demonstrating that there is no genuine issue of material fact. Fletcher v. Lyles, 999 So.2d 1271, 1276 (Miss.2009). In Calvert v. Griggs, 992 So.2d 627, 632 (Miss.2008) this Court stated:
The existence of a genuine issue of material fact will preclude summary judgment. A fact is material if it “tends to resolve any of the issues properly raised by the parties.” The motion “should be overruled unless the trial court finds, beyond a reasonable doubt, that the plaintiff would be unable to prove any facts to support his claim.”
Calvert, 992 So.2d at 632.
¶ 23. This Court determined that a general negligence claim, not a MTCA claim, was at issue in this case. In Glover v. Jackson State University, this Court defined negligence as “doing what a reasonable, prudent person would not do, or failing to do what a reasonable, prudent person would do, under substantially similar circumstances.” Glover, 968 So.2d 1267, 1277 (Miss.2007). In Todd v. First Baptist Church of West Point, this Court set forth the elements required to prove negligence and stated:
The elements of a prima facie case of negligence are duty, breach, causation, and damages. Duty and breach must be established first. The elements of breach and proximate cause must be established by the plaintiff with supporting evidence.
Todd, 993 So.2d 827, 829 (Miss.2008) (citations omitted). “Duty and breach of duty, which both involve forseeability, are essential to finding negligence and must be demonstrated first.” Simpson v. Boyd, 880 So.2d 1047, 1050 (Miss.2004) (citing Donald v. Amoco Prod. Co., 735 So.2d 161, 174 (Miss.1999)). In order to rebut Trooper Walker’s showing that no genuine issue of material fact exists, Duckworth has to “[produce] supportive evidence of significant and probative value” that demonstrates that Trooper Walker “breached the established standard of care and that such breach was the proximate cause” of Duck-worth’s injury. Id.
*441 II.
¶ 24. As noted above, as a law enforcement officer, Trooper Walker had a duty to enforce the laws and ensure that all citizens abide by the laws. In order to perform these tasks, a police officer must have the ability reasonably to pursue individuals who violate or are suspected of violating the law. When a police department has a pursuit policy in effect, however, the officer must reasonably follow the guidelines as set forth in the policy. Trooper Walker followed his department’s pursuit policy. The record reflects that the evidence, when viewed in the light most favorable to Duckworth, shows no general issue of material fact on the issue of the police pursuit policy.
¶ 25. Other than noting generally that there were “numerous triable issues of fact” to place before a jury, the majority does not address the alleged violation of the police pursuit policy per se. Nonetheless, the pursuit policy of the State of Alabama states:
Normally, pursuits into another state should be avoided. However, if circumstances warrant continuing pursuit into another state, a supervisor and the affected Division Chief must be notified, as well as the primary law enforcement agency of the other state.
¶ 26. The record reveals that Trooper Walker observed a broken windshield and occupants not wearing seatbelts in Warren’s vehicle. After the trooper began to follow Warren’s vehicle with his blue lights on, Warren pulled his car to the side of the road. When Trooper Walker began to exit his patrol car to approach Warren’s vehicle, Warren turned his vehicle around in a circular driveway and began to flee. At this point, Trooper Walker returned to his patrol car and began to pursue Warren. Thereafter, Trooper Walker contacted his dispatch center to give notification of his pursuit of Warren’s eluding vehicle. As the pursuit progressed, Trooper Walker notified the dispatch center that the chase was heading into Mississippi. The dispatch center, in turn, contacted the sheriffs department in Lamar County, Alabama, and the sheriffs department in Monroe County, Mississippi. At no time was Trooper Walker instructed to end his pursuit of the fleeing vehicle. The facts demonstrate that Trooper Walker complied with the Alabama pursuit policy.
III.
¶ 27. Duckworth also argued that there were genuine issues of material fact as to whether the pursuit was too long considering the road conditions, the offense of the driver, and whether there were alternate means of apprehending Warren. Again, when viewing the evidence in the light most favorable to the nonmoving party, Duckworth, it could not support a jury verdict in favor of Duckworth on the issue of negligence in regard to Trooper Walker’s pursuit of Warren on Vernon Road. The simple fact is that Warren was the proximate cause of the collision and Duck-worth’s sustained injuries. Apart from this obvious fact, which defeats Duck-worth’s ability to prove a vital element of negligence, that being causation, he also cannot prove that Trooper Walker breached any duty.
¶ 28. The majority notes in its opinion that this is an unusual case since the events at issue were captured on a videotape. The trial court and this Court had the benefit of viewing the police-cruiser videotape of the vehicle pursuit. As the majority aptly points out, the Alabama defendants rely on the United States Supreme Court case Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). In Scott, a Georgia highway patrolman forced a driver from a Georgia *442 highway during a police chase, resulting in critical injuries to the driver of the fleeing vehicle. Id. at 375, 127 S.Ct. 1769. In its analysis, the United States Supreme Court reviewed a motion for summary judgment. Id. at 378,127 S.Ct. 1769. Even looking at evidence in the light most favorable to the nonmoving party, the Scott Court determined:
At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a “genuine” dispute as to those facts. Fed. Rule Civ. Proc. 56(c). As we have emphasized, “[wjhen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no ‘genuine issue for trial.’ ” Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (footnote omitted). “[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. That was the case here with regard to the factual issue whether respondent was driving in such fashion as to endanger human life. Respondent’s version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.
Scott, 550 U.S. at 380-381, 127 S.Ct. 1769.
¶ 29. Here, the trial court and this Court had the benefit of viewing the entire pursuit from the police-cruiser videotape. The whole pursuit lasted less than six and one-half minutes, covering approximately six miles. The videotape depicted a pursuit over a rural, wooded, two-lane country road. Few or no houses and no businesses were located on the route of the pursuit. The videotape showed no pedestrians on the route.
¶ 30. By all indications, the pursuit occurred during bright, daytime hours with little oncoming traffic between 4:55 p.m. and 5:02 p.m. Other than Duckworth’s vehicle, Trooper Walker and Warren passed eight oncoming vehicles during the pursuit. Neither Trooper Walker nor Warren passed any vehicle traveling in the same direction as he was. Indeed, the video showed no vehicle traveling in the same direction as the trooper and Warren. The record reveals that Trooper Walker had both his blue lights and his sirens on at the time of pursuit.
¶ 31. No alternatives would have led to Warren’s capture. While Trooper Walker did obtain the license plate number of Warren’s vehicle, there was no guarantee as to the identity of the driver. Further, the United States Supreme Court in Scott acknowledged that when police discontinue a pursuit, the suspect cannot be notified that the chase has ended, therefore, the suspect likely will continue to race away rather than slow down his or her speed. Scott, 550 U.S. at 385, 127 S.Ct. 1769. The Scott Court further stated:
*443 [W]e are loath to lay down a rule requiring the police to allow fleeing suspects to get away whenever they drive so recklessly that they put other people’s lives in danger. It is obvious the perverse incentives such a rule would create: Every fleeing motorist would know that escape is within his grasp, if only he accelerates to 90 miles per hour, crosses the double-yellow line a few times, and runs a few red lights. The Constitution assuredly does not impose this invitation to impunity-earned-by-reeklessness.
Id. at 385-86, 127 S.Ct. 1769. See also City of Jackson v. Brister, 838 So.2d 274, 285 (Miss.2003) (Easley, J., dissenting).
¶ 32. During the course of this short pursuit, the trooper increased his speed to approximately sixty miles per hour. The video shows that Trooper Walker always maintained a reasonable distance between his cruiser and Warren’s vehicle. In fact, the latter portion of the video showed that Trooper Walker increased the distance between his cruiser and Warren’s vehicle well prior to the collision between Warren and Duckworth. Additionally, Warren’s vehicle was in the line of Trooper Walker’s vision and was depicted on the video for the entire chase, except for the last few moments of the pursuit when a curve prevented taping of the collision. Apart from the curve at the very end of the pursuit, the video captured every moment of the police chase, and the view was never blocked or hindered by roadway obstructions or weather conditions.
¶ 33. The record contains much more than the police-pursuit videotape. For instance, Duckworth relies on his expert Dennis Waller. The expert opined that termination of the pursuit would have stopped Warren’s reckless driving. This opinion is nothing more than mere speculation. Even the United States Supreme Court, in Scott, noted that police have no way of broadcasting to the fleeing suspect that a pursuit has ended. The majority notes that the road bed narrows nearer to crash site. The video shows otherwise: The roadways are a uniform width throughout the pursuit.
¶ 34. Further, Waller asserted that a vehicle traveling more than sixty miles per hour on Vernon Road poses an inherently dangerous risk to oncoming traffic. Trooper Walker and Warren passed eight oncoming vehicles without incident. Speed is not necessarily the determining factor to the risk. Indeed, the video depicts no sign posts mandating speed reduction on this stretch of road, and more specifically, before the curve near the crash site. Further, it is undeniable that there was a large distance between Trooper Walker’s cruiser and Warren’s vehicle well before the collision.
¶ 35. Notwithstanding these opinions, there are no genuine issues of material fact. Trooper Walker conducted his pursuit of Warren pursuant to Alabama’s pursuit policy. He also proceeded in a cautious and reasonable manner throughout the pursuit, and he was not the proximate cause of the collision. Therefore, Trooper Walker was not negligent in the performance of his duties.
IV.
¶ 36. Trooper Walker was not eligible for the protections of the MTCA because of his status as an out-of-state law-enforcement officer. In the interest of promoting public safety and law and order, Mississippi and its surrounding states should consider measures that reduce liability for law enforcement officers who conduct police business by pursuing fleeing suspects *444 across state lines.[4] Every Mississippian has an interest in maintaining law and order within our borders. However, to maintain that order, our police officers may have occasion to travel outside our state’s borders. Likewise, in this case, an Alabama officer traveled outside his state. By not implementing limited liability or some form of interstate immunity, where appropriate, suspects need only race to the state line to avoid police action. In other words, suspects near state borders have an incentive to evade police and run for the border to escape detainment and/or prosecution.
¶ 37. The MTCA sets forth a reckless-disregard standard to be implemented in intrastate pursuit chases in Mississippi. Miss.Code Ann. § 11 — 46—91(l)(c) (Rev. 2002). This standard is analyzed in terms of ten factors to determine whether a police pursuit was performed in reckless disregard for the safety and well-being of other individuals not engaged in criminal activity. See City of Ellisville v. Richardson, 913 So.2d 973, 977 (Miss.2005). This standard, or some form thereof, should be used as a basis for suits involving interstate police pursuits.
V.
¶ 38. For the foregoing reasons, I dissent from the majority opinion and would affirm the trial court’s grant of summary judgment, but for reasons other than those stated by the trial court.

. The record contains only a copy of the Alabama pursuit policy. No additional pursuit policies for Mississippi or any of her surrounding sister states are included in the record for comparison purposes.