IRVING, J.,
for the Court.
¶ 1. John and Donna Hulsman filed a suit in the Rankin County Circuit Court against Behavioral Health Systems, Inc. (BHS) and Blue Cross & Blue Shield of Alabama (Blue Cross), alleging several state-law claims, including vicarious liability, intentional and/or negligent infliction of emotional distress, negligent hiring, negligent supervision, corporate negligence, and gross negligence. Blue Cross and BHS filed a joint motion to dismiss or, in the alternative, a motion for summary judgment on the basis of federal preemption under the Employment Retirement Income Security Act (ERISA). The circuit court granted the motion. Feeling aggrieved, the Hulsmans appeal and assert that the circuit court erred in holding that their claims were preempted by ERISA.
¶ 2. Finding no reversible error, we affirm.
FACTS
¶ 3. John’s employer, Motion Industries, Inc., provided a healthcare insurance plan to its employees that was administered by Blue Cross. John and Donna were participants in the plan which included a mental health program that was managed by BHS. In December 2005, Donna underwent surgery to treat nerve pain; however, the surgery did not relieve all of her pain. Accordingly, Donna’s physician recommended that she be treated by a psychiatrist to help her cope with the remaining pain. In order to receive mental health treatment, BHS requires the insured to *840 contact BHS for a referral to the nearest certified assessment provider. Donna contacted BHS and was referred to Dr. David Richardson, a psychiatrist. Dr. Richardson prescribed several medications, which Donna alleges caused her to experience a number of adverse side effects, including uncontrollable muscle spasms and fear that she would harm herself or others.
¶ 4. Because of the side effects, the Hulsmans contacted BHS for a referral to a psychologist, so Donna could be treated without medication. BHS referred Donna to Mark Trailer, a local psychologist. According to Donna, her family physician informed her that she should still continue to see a psychiatrist. The Hulsmans asked BHS for another psychiatrist referral, and ultimately, they were referred back to Dr. Richardson.
¶ 5. On August 31, 2006, Donna called John and told him that she thought it would be best for her to be admitted to a hospital because she was afraid that she was going to hurt herself or someone around her. John then called BHS and informed them of what Donna was experiencing. He requested that BHS refer Donna to an in-patient treatment facility. According to John, the BHS representative stated that she would contact him the following week with a referral because it would be difficult to have Donna admitted into an in-patient facility over the Labor Day holiday weekend. On September 8, 2006, after having not received a referral, John again contacted BHS and requested an in-patient referral. However, no referral was given on that date. On September 11, 2006, Donna attempted suicide by slitting her wrists.
¶ 6. Additional facts, as necessary, will be discussed during the analysis and discussion of the issue.
ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 7. “[An appellate court] applies a de novo standard of review to the trial court’s grant of summary judgment.” Windham v. Latco of Miss., Inc., 972 So.2d 608, 610(¶ 4) (Miss.2008) (citing Moss v. Batesville Casket Co., 935 So.2d 393, 398(¶ 15) (Miss.2006)). “The evidence must be viewed in the light most favorable to the non-moving party. If, in this view, the moving party is entitled to a judgment as a matter of law, then summary judgment should be granted in [the movant’s] favor. Otherwise, the motion should be denied.” Palmer v. Anderson Infirmary Benevolent Ass’n, 656 So.2d 790, 794 (Miss.1995) (citing Brown v. Credit Ctr., Inc., 444 So.2d 358, 362 (Miss.1983)). Our rules of civil procedure require the trial court to grant summary judgment where “the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). “A fact is material if it ‘tends to resolve any of the issues properly raised by the parties.’ ” Simpson v. Boyd, 880 So.2d 1047, 1050(¶ 9) (Miss.2004) (quoting Palmer, 656 So.2d at 794).
¶ 8. Our supreme court has held that preemption is proper in three circumstances: (1) “where Congress explicitly preempts state law”; (2) “where preemption is implied because Congress has occupied the entire field”; or (3) “where preemption is implied because there is an actual conflict between federal and state law.” Cooper v. Gen. Motors Corp., 702 So.2d 428, 434(¶ 16) (Miss.1997) (citing English v. Gen. Elec. Co., 496 U.S. 72, 78-79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990)).
¶ 9. In Aetna Health, Inc. v. Davila, 542 U.S. 200, 207-09, 124 S.Ct. 2488, 159 *841 L.Ed.2d 312 (2004), the United States Supreme Court discussed in extensive detail ERISA’s purpose and preemption powers:
“When a federal statute wholly displaces the state-law cause of action through complete pre-emption,” the state claim can be removed. Beneficial Nat. Bank v. Anderson, 539 U.S. 1, 8, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003). This is so because “when the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.” Ibid. ERISA is one of these statutes.
Congress enacted ERISA to “protect ... the interests of participants in employee benefit plans and their beneficiaries” by setting out substantive regulatory requirements for employee benefit plans and to “provide for appropriate remedies, sanctions, and ready access to the Federal courts.” 29 U.S.C. § 1001(b).... The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive preemption provisions, see ERISA § 514, 29 U.S.C. § 1144, ... which are intended to ensure that employee benefit plan regulation would be “exclusively a federal concern.” Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981).
ERISA’s “comprehensive legislative scheme” includes “an integrated system of procedures for enforcement.” [Mass. Mut. Life Ins. Co. v.] Russell, 473 U.S. [134,] 147, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) (internal quotation marks omitted). This integrated enforcement mechanism, ERISA § 502(a), 29 U.S.C. § 1132(a) ... is a distinctive feature of ERISA, and essential to accomplish Congress’ purpose of creating a comprehensive statute for the regulation of employee benefit plans. As the Court said in Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987):
“The detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. ‘The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted ... provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.’ ”[1] Id., at 54, *842 107 S.Ct. 1549, 95 L.Ed.2d 39 (quoting Russell, supra, at 146, 105 S.Ct. 3085, 87 L.Ed.2d 96).
Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empt-ed. See 481 U.S., at 54-56, 107 S.Ct. 1549, 95 L.Ed.2d 39; see also Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 143-145, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990).
(Emphasis and footnote added).
¶ 10. The Hulsmans contend that the Mississippi Supreme Court has not yet determined whether a claim like theirs — a claim that the medical provider failed to provide for or arrange for medical treatment — is preempted by ERISA. Accordingly, they argue that the Florida Supreme Court case, Villazon v. Prudential Health Care Plan, Inc., 843 So.2d 842 (Fla.2003), provides persuasive authority in support of their position and that its reasoning should be adopted by this court. In their briefs, the Hulsmans assert: “[Villazon ] held that based on the U.S. Supreme Court’s decision in New York Blue Cross v. Travelers Ins., 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995), a distinction is to be made between suits which relate to the administration of employee benefit plans and those which do not.” The Hulsmans assert that when “ERISA is implicated by a complaint for failing to provide, arrange for, or supervise qualified doctors to provide the actual medical treatment for plan participants, federal preemption is inappropriate.” They contend that Blue Cross and BHS failed to provide or arrange for medical treatment for Donna and that as a result, they suffered serious injuries. We find John and Donna’s arguments unpersuasive.
¶ 11. In Davila, Juan Davila and Ruby Calad, two beneficiaries of healthcare plans covered by ERISA, brought separate Texas state-court suits, alleging (1) that the health maintenance organizations (HMOs) that administered the plans had refused to cover certain medical services in violation of an HMO’s duty to exercise ordinary care under a Texas healthcare statute and (2) that those refusals had proximately caused injuries to the beneficiaries. Davila, 542 U.S. at 204-05, 124 S.Ct. 2488. Aetna Health, Inc. (Aetna) administered Davila’s ERISA-regulated employee benefit plan by reviewing requests for coverage and paying providers. Id. at 204, 124 S.Ct. 2488. Calad’s plan was administered by CIGNA Health Care of Texas, Inc. (CIGNA), which was responsible for plan benefits and coverage decisions. Id. Davila and Calad suffered injuries that allegedly were proximately caused by Aetna’s and CIGNA’s decisions not to cover particular treatment and services recommended by their physicians. Id. at 204-05, 124 S.Ct. 2488. Davila and Calad argued that these decisions violated legal duties independent of ERISA. Specifically, they brought their claims against the insurance providers under the Texas *843 Health Care Liability Act (THCLA), alleging that Aetna and CIGNA “ ‘controlled, influenced, participated in and made decisions which affected the quality of the diagnosis, care, and treatment provided’ in a manner that violated ‘the duty of ordinary care_Id. at 212, 124 S.Ct. 2488.
¶ 12. In holding that Davila’s and Ca-lad’s claims were completely preempted by ERISA, the Supreme Court stated:
The duties imposed by the THCLA in the context of these cases, however, do not arise independently of ERISA or the plan terms. The THCLA does impose a duty on managed care entities to “exercise ordinary care when making health care treatment decisions,” and makes them liable for damages proximately caused by failures to abide by that duty. However, if a managed care entity correctly concluded that, under the terms of the relevant plan, a particular treatment was not covered, the managed care entity’s denial of coverage would not be a proximate cause of any injuries arising from the denial. Rather, the failure of the plan itself to cover the requested treatment would be the proximate cause....
Thus, interpretation of the terms of respondents’ benefit plans forms an essential part of their THCLA claim, and THCLA liability would exist here only because of petitioners’ administration of ERISA-regulated benefit plans. Petitioners’ potential liability under the THCLA in these cases, then, derives entirely from the particular rights and obligations established by the benefit plans....
Hence, respondents bring suit only to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA. We hold that respondents’ state causes of action fall “within the scope of’ ERISA § 502(a)(1)(B)[2] ... and are therefore completely pre-empt-ed by ERISA § 502 and removable to federal district court.
Id. at 212-14, 124 S.Ct. 2488 (internal citations omitted) (footnote added).
¶ 13. Accordingly, we find that Davila stands for the proposition that if a party’s claim emanates from the administration of an ERISA-regulated benefit plan, then the claim is preempted. Additionally, we find that Congress intended that the only remedies afforded to a party are those authorized by ERISA.
¶ 14. The Hulsmans allege that Blue Cross’s and BHS’s failure to timely refer Donna to an in-patient facility caused her suicide attempt. We find that this is not a denied-benefits claim; rather, it is a delayed-benefits claim. Regardless, the claim is related to the administration of the medical benefit plan. Therefore, in accordance with Davila, the claim is preempted by ERISA.
¶ 15. THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR.

. ERISA § 502(a), as set forth in 29 U.S.C. § 1132(a), provides:
A civil action may be brought—
(1)by a participant or beneficiary—
(A) for the relief provided for in subsection (c) of this section [concerning requests to the administrator for information], or
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title [breach of fiduciary duty];
(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress *842 such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;
(4) by the Secretary, or by a participant, or beneficiary for appropriate relief in the case of a violation of 1025(c) of this title [information to be furnished to participants];
(5) except as otherwise provided in subsection (b) of this subsection, by the Secretary
(A) to enjoin any act or practice which violates any provision of this subchapter, or
(B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter;
(6)by the Secretary to collect any civil penalty under paragraph (2), (4), (5), (6), (7), (8), or (9) subsection (c) or under subsection (i) or (l) is section.

. As noted earlier, ERISA § 502(a)(1)(B) states: "A civil action may be brought by a participant or beneficiary — to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]”