# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-01113-COA

**PATRICIA BROOKS**                                                      **APPELLANT**

**v.**

**RENEE DAWN JEFFREYS, INDIVIDUALLY,**                    **APPELLEE**
**AND ON BEHALF OF CBR CLEANING**
**SERVICES**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/23/2021 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS JR. |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JAMES KENNETH WETZEL |
| | GARNER JAMES WETZEL |
| ATTORNEYS FOR APPELLEE: | SCOTT TIMOTHY ELLZEY |
| | MADISON CHANDLER WRIGHT |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 01/17/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., McDONALD AND McCARTY, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.     Patricia Brooks sued Renee Jeffreys, individually and on behalf of CBR Cleaning

Services (CBR) (also referred to as Defendant), for negligence in the Circuit Court of

Hancock County.  Jeffreys was the owner of CBR.  Brooks alleged that CBR employees

were cleaning the floors of her residence in a negligent manner and caused her to fall and

injure herself.  The trial court granted the Defendant's motion for summary judgment and

dismissed the case with prejudice.  Brooks now appeals.  Finding there are genuine issues

of material fact as to whether the Defendant breached the duty of care owed to Brooks, we

reverse and remand for a trial on the merits.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2.     Brooks hired CBR to clean her residence in Diamondhead, Mississippi. Specifically, Brooks wanted CBR to clean her floors. This was the second time CBR had cleaned Brooks's residence, which measured about 640 square feet. Her floors consisted of "wood laminate" and "ceramic tile flooring." CBR sent three employees to clean Brooks's home: Selina Fanning, Ashley Clark, and Madison Symon. Fanning was CBR's residential manager, and Clark and Symon were employees who operated a dry and wet mop, respectively.

¶3.     The incident occurred on February 18, 2019. While the CBR employees were cleaning her home, Brooks received a call from her brother requesting that she take him to a doctor's appointment. Brooks was seated on a couch in her living room. As she talked to her brother on her cell phone, she stood up and walked to a credenza where her calendar was located. Brooks testified her credenza was about eight feet away, right across from her couch. While Brooks was noting the appointment in her calendar, a CBR employee walked behind her pushing or carrying a wet mop across the laminate wood floor. Brooks turned to walk back to the couch by the same path, walking between two employees. She fell on the wet floor. Brooks did not recall what shoes she was wearing, but she thought they were "slip-on tennis shoes or something." Brooks sustained a broken leg, which required surgery, as well as a significant injury (or injuries) to her ankle and knees.

¶4.     Brooks sued the Defendant for negligence, which she claimed caused her injuries. The Defendant denied responsibility, alleging Brooks was given adequate warning that the

2

floor was wet before she fell. Discovery ensued, after which the Defendant filed a motion for summary judgment, claiming Brooks established no breach of duty by the Defendant. In support of the motion, the Defendant offered the depositions of Brooks, Jeffreys, Fanning, and Symon, as well as the complaint and answer. The Defendant argued the evidence showed Brooks's own negligence caused her damages: Brooks knew of and appreciated the open and obvious risks of walking across the wet floors. Further, Brooks hired CBR specifically for this task. The Defendant claimed Brooks was warned several times that the floors were wet, but she walked across them anyway.

¶5. Brooks filed a response in opposition to summary judgment, arguing that there was a contradiction in testimony as to whether Brooks was warned about the wet floors, which created a genuine issue of material fact. Further, she argued that there was a conflict in evidence over whether Brooks was aware the floors had been mopped and were wet.

¶6. After a hearing, the trial court granted summary judgment in favor of the Defendant, concluding that the wet floor Brooks fell upon was a type of danger she could appreciate and expect. Further, the trial court found that the wet floors were open and obvious, which barred a negligence claim. Because Brooks failed to establish any negligence by the Defendant, the trial court ruled there was no factual question to consider, and summary judgment was proper.

*Deposition Testimony of Brooks*

¶7. Brooks described how the incident occurred as follows:

> I finished writing the appointment on my calendar, and I waited for the girl to
> pass behind me. The other one was just coming into the room from the

3

bathroom door so she was on that side. The other one coming from the kitchen area was coming behind me. When she passed behind me, then I started to walk toward my couch. And that's when I slipped.

Regarding the fall, Brooks testified:

> But when I took a step to start walking toward the couch, that's when my feet were just not making any contact. It was just (making pedaling motions with her hands), you know, me trying to avoid going down more or less. . . . [T]he girl that was in the bathroom came out, started to grab me, and the girl that was coming from the kitchen . . . she passed behind me before I turned around—she was grabbing at me. So the three of us were on this area, and it was only—only wet behind me. And that's where I went down, and I was in the water, you know, with my shins. . . . It was hardly a step from the credenza. I took one step and didn't get any step.

Additionally, Brooks denied the CBR workers ever warned her about the wet floors, and she did not know the workers were mopping:

> Q. Do you recall the cleaning crew telling you before you feel that day that the floor was wet and that you needed to be careful?
>
> A. No.
>
> Q. If three members of the cleaning crew testify that they told you specifically that the floor is wet, that they are mopping, and that you need to be careful, are you saying that is not true?
>
> A. I'm saying it's not true.
>
> . . . .
>
> Q. Prior to the time you fell, when you got up from the couch, went to the credenza and were heading back to the couch, and you fell on your way back to the couch, you had gotten up and walked across the mopped floor area before then that day, hadn't you?
>
> A. No, no.
>
> Q. Do you recall the cleaning crew workers telling you, "This floor is wet, you shouldn't be walking here?"

4

A. No.

Q. . . . [B]efore you fell, are you telling me you're denying that they told you specifically, "This floor is wet, we're mopping; you shouldn't walk here," or words to that effect? You're telling me that didn't happen?

A. That did not happen. I had no warning. They did not tell me they were mopping. And all I saw her do was come into the room from the other side. . . . She stayed in the bathroom doorway. This one came behind me. I wasn't there two seconds writing down Billy's name on my calendar. And when I came around . . . I waited to have her go around me so that I could get back on the couch and get out of yall's way.

. . . .

Q. Were you ever told that the floor was wet?

A. No.

Q. Were you ever warned that, "We just sprayed or mopped behind you?"

A. No.

When asked what type of equipment the workers had, Brooks testified:

A. "She had a blue fluffy thing that was on the floor that she pushed along with her when she walked behind me."

Q. Is that what you appreciated as the mop?

A. That—now, yeah.

### Deposition Testimony of Selina Fanning and Madison Symon

¶8. Fanning, CBR's residential manager, and Symon both testified that they warned Brooks they were mopping. Fanning testified:

We told her that we were starting to mop into the living room and the floor would be wet. We didn't have a time frame because I don't—again, I don't do that until we're coming through. I let them know—give it about ten minutes or so for the floor to dry, then you're free to walk around.

5

Fanning testified that Brooks was in the living room with her while Clark and Symon mopped Brooks's bedroom and bathroom, which connected to Brooks's living room. When mopping began in the living room, Brooks was seated on the couch. They did not tell Brooks she had to leave the room, but they did tell her that they were mopping there and that the floor would be wet. Fanning testified Brooks was wearing some sort of open-toed shoes like flip-flops or sandals. Fanning testified that Brooks was "not paying attention to [the workers]. So when [Clark and Symon] came in, they let her know again." Fanning continued:

> [W]e told her we were mopping, that the floor would be wet. She needed to go to her calendar to check a date for her brother. And she went knowing that the floor was wet or that the floor was being mopped. And then she specifically walked straight between the two people mopping knowing that they were mopping.

¶9. Symon, who was operating the wet mop, testified that she and Clark started cleaning the floors in the bedroom and then went to the bathroom and living room. Symon mopped while Clark came behind her with the dry mop getting the water up so the floors would dry more quickly. Symon testified that Brooks received a phone call from her brother. She stood up from the couch and walked to her calendar. Symon testified she previously had mopped the area where Brooks fell, and Clark had already gone over the area with the dry mop. Symon testified that she warned Brooks, who was on the phone, three times, "[T]he floor is wet. Please be careful." Symon testified that Brooks ignored her and went to the calendar anyway: "[Brooks] was talking on the phone. She wasn't paying attention to what she was doing. And we tried to tell her." As Brooks was headed back to the couch, Symon

6

testified that Brooks fell because the "floor was a little wet . . . [f]rom mopping."

## STANDARD OF REVIEW

¶10.    An appellate court reviews the trial court's grant or denial of a motion for summary judgment de novo. *Thomas v. Shed 53 LLC*, 331 So. 3d 66, 70 (¶10) (Miss. Ct. App. 2021) (citing *Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 88 (¶9) (Miss. 2013)). "The evidence is viewed in the light most favorable to the nonmoving party." *Id.* Summary judgment will be appropriate if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Karpinsky*, 109 So. 3d at 88 (¶10) (quoting M.R.C.P. 56(c)). The movant carries the burden of persuading the trial court that no genuine issue of material fact exists and judgment as a matter of law is proper. *Id.* at (¶11). The party opposing summary judgment "may not rest upon the mere allegations or denials of his pleadings, but his response . . . must set forth specific facts showing there is a genuine issue for trial." *Id.* at (¶10) (quoting M.R.C.P. 56(e)). "[T]he non-moving party must be given the benefit of the doubt concerning the existence of a material fact." *One S. Inc. v. Hollowell*, 963 So. 2d 1156, 1160 (¶6) (Miss. 2007). "If any triable issues of material fact exist, the trial court's decision to grant summary judgment will be reversed." *Chaffee ex rel. Latham v. Jackson Pub. Sch. Dist.*, 270 So. 3d 905, 907 (¶10) (Miss. 2019) (quoting *Todd v. First Baptist Church of West Point*, 993 So. 2d 827, 829 (¶9) (Miss. 2008)).

## ANALYSIS

7

¶11. Brooks argues that this Court should reverse and remand for a trial on the merits because there was a genuine issue of material fact as to whether the Defendant breached a duty of care by creating an unreasonably dangerous condition; further, there was contradictory testimony on whether any warning was given to Brooks. We agree that the trial court's grant of summary judgment in favor of the Defendant was in error and that reversal is proper.

¶12. To succeed on a negligence claim, a plaintiff must prove the following by a preponderance of the evidence: duty, breach of duty, causation, and injury. *Patterson v. Liberty Assocs. L.P.*, 910 So. 2d 1014, 1019 (¶14) (Miss. 2004). The plaintiff must show "(1) the existence of a duty 'to conform to a specific standard of conduct for the protection of others against the unreasonable risk of injury[,]' (2) a breach of that duty, (3) causal relationship between the breach and alleged injury, and (4) injury or damages." *Rein v. Benchmark Const. Co.*, 865 So. 2d 1134, 1143 (¶30) (Miss. 2004) (quoting *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 174 (¶42) (Miss. 1999)). The standard of care in negligence cases is whether the defendant "acted as a reasonable and prudent person would have under the same or similar circumstances." *Donald*, 735 So. 2d at 175 (¶48). For Brooks to recover under the negligence theory, she bore the burden of presenting sufficient evidence that the Defendant was not only negligent but also that such negligence was the proximate cause of the dangerous condition that resulted in her injuries.

¶13. In her pleadings and on appeal, Brooks also asserted claims based on premises liability against the Defendant. However, counsel for both parties acknowledged at the

hearing on the motion for summary judgment that this case was a general negligence action because Brooks was not at a business. She was at her home when she was injured. She had invited the business to her house to clean.[1] "Mississippi adheres to the invitee/licensee/trespasser trichotomy when analyzing [a] property owner's duty of care." *Corley v. Evans*, 835 So. 2d 30, 37 (¶21) (Miss. 2003). Brooks obviously was not an invitee, licensee, or trespasser on her own property. Because no duty was owed to Brooks under premises liability, we find this case constitutes a general negligence action.

¶14. Thus, the Defendant owed Brooks a duty not to create a dangerous or hazardous condition that could cause her injury and/or a duty to warn her of any dangerous condition created by the Defendant, such as a wet floor. *See Patterson v. T. L. Wallace Const. Inc.,* 133 So. 3d 325, 331 (¶20) (Miss. 2013) ("A defendant who creates a hazardous condition has a duty to make safe or warn of that condition; ownership is immaterial."); *Spann v. Shuqualak Lumber Co.*, 990 So. 2d 186, 190 (¶9) (Miss. 2008) (holding the defendant had a duty to refrain from creating an unreasonably dangerous condition—smoke—which could impede a motorist's vision). On appeal the Defendant argues that CBR employees did not create a dangerous condition, that the employees had no duty to warn Brooks because the condition was open and obvious, and that Brooks appreciated the risks of wet floors. Therefore, the Defendant contends summary judgment was proper.

¶15. Viewing the evidence in the light most favorable to the non-movant, Brooks, we find

---

[1] Specifically, counsel for Brooks stated, "[T]his is not a premises liability case. This is a general negligence case. My client owned the premises. They were there to perform a service." Counsel for the Defendant "agree[d] that this is a negligence action."

summary judgment was not proper. First, a question of material fact exists as to whether the Defendant created a dangerous condition when the CBR employees mopped behind Brooks after she went to the credenza, leaving a damp floor upon which she slipped. The situation is similar to one where a person unknowingly has a chair pulled out from behind her and falls while trying to sit down.

¶16. Second, a genuine issue of material fact exists as to whether the Defendant took reasonable precautions to protect Brooks. There was contradictory testimony whether CBR employees warned Brooks that the floor was wet due to being mopped and whether she was aware the workers were mopping. "Issues of fact sufficient to require a denial of a motion for summary judgment are obviously present where one party swears to one version of the matter in issue and another says the opposite." *Clinton Healthcare LLC v. Atkinson*, 294 So. 3d 66, 70 (¶8) (Miss. 2019) (quoting *Miller v. Meeks*, 762 So. 2d 302, 304 (¶3) (Miss. 2000)). "When doubt is present about whether any genuine issues of material fact exist, the trial court should deny the motion for summary judgment and permit a full trial." *Id.* at 72 (¶12).

¶17. The testimony between Brooks and the two cleaners, Fanning and Symon, conflicted as to whether Brooks was warned about the wet floors. In her deposition, Brooks testified several times that she had no warning from any of the Defendant's employees that the floor was wet. Additionally, Brooks testified at least four times that she had no knowledge that the workers were even mopping in her living room. However, Brooks's testimony was contradicted by the deposition testimony of Fanning and Symon. Both employees testified

10

that they gave Brooks oral warnings that the floor was wet, and Symon testified she warned Brooks "at least three times."

¶18. Lastly, we note that the Mississippi Supreme Court has held that the question of "how open and obvious a condition may have been is a question for the jury in all except the clearest cases." *Bell v. City of Bay St. Louis*, 467 So. 2d 657, 664 (Miss. 1985). The trial court found that this case was one of the "clearest cases" of an open and obvious danger; therefore, the employees had no duty to warn Brooks. We disagree and find it is a question for a jury. Mississippi Code Annotated section 11-7-17 (Rev. 2019) states, "All questions of negligence and contributory negligence shall be for the jury to determine." Brooks had her back to the area at issue. There is conflicting evidence whether Brooks was aware the area behind her had been mopped and was wet before she turned around. If she was unaware of the mopping, the dangerous condition would not be "open and obvious," especially if the mopping occurred after Brooks had stood up and while her back was turned. It follows that the cleaners had a duty to warn Brooks, and there is a conflict in testimony about whether she was in fact warned. If she did not know the floors were wet, it would not be a danger she expected.

## CONCLUSION

¶19. Finding Brooks has met her burden of showing there are triable, genuine issues of material fact for a jury to determine, we reverse the trial court's grant of summary judgment and remand for proceedings consistent with this opinion.

¶20. **REVERSED AND REMANDED.**

11

**CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. GREENLEE, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**